## S01A1688. THE STATE v. REDDING.
### (561 SE2d 79)

HINES, Justice.

The State appeals from the grant of Redding's motion to dismiss for violation of his constitutional right to a speedy trial. See OCGA § 5-7-1 (a) (1). For the reasons that follow, we affirm.

Carlton Redding was arrested on July 29, 1993. On March 22, 1994, Redding was indicted along with Gary Lloyd for malice murder, felony murder, and aggravated assault.[1] Redding was separately indicted for possession of a firearm by a convicted felon. All crimes were alleged to have occurred on July 28, 1993. Redding was arraigned on August 5, 1994. Plea negotiations took place, and the State was notified that Redding was serving a lengthy federal sentence on drug charges.[2] In September 1994, the State decided to "dead docket" the case, and informed Redding's counsel of its intent. See OCGA § 15-6-61 (a) (4) (B). However, the State failed to actually place the case on the dead docket, and the case did not appear on a plea and arraignment calendar until July 13, 1998. It was then placed on the trial calendar for February 23, 1999. On February 19, 1999, Redding filed a motion to dismiss. After a hearing, the trial court granted the motion, finding that Redding's right to a speedy trial had been violated.

Redding's motion to dismiss was based on his right to a speedy trial under the federal Constitution. He did not seek to enforce his statutory right to a speedy trial. See OCGA § 17-7-171. Thus, the appropriate analysis is found in *Barker v. Wingo*, 407 U. S. 514 (92 SC 2182, 33 LE2d 101) (1972).

> In *Barker v. Wingo* [. . .], the Supreme Court of the United States identified four factors to be considered by a court in determining whether an accused's constitutional right to a speedy trial had been violated. . . . (a) the length of the delay, (b) the reason for the delay, (c) the defendant's assertion of his right, and (d) the prejudice to the defendant. 407

---

[1] Lloyd's prosecution is not part of this appeal.

[2] A copy of the federal sentence does not appear in the record. In addressing the motion to dismiss, the court described it as 28 years. In opening remarks on the motion, Redding described it as 320 months (i.e., 26 years, 8 months). In testimony, the prosecuting attorney referred to it as "18 or 19 years."

U. S. at 530. The Supreme Court further stated that it regarded none of the factors as either a necessary or sufficient condition to a finding of a deprivation of the right of speedy trial but rather that the factors should be considered together in a balancing test of the conduct of the prosecution and the defendant.

*Boseman v. State*, 263 Ga. 730, 731 (1) (438 SE2d 626) (1994). The question is whether the trial court abused its discretion in ruling that Redding's speedy trial rights were violated. See *Burns v. State*, 265 Ga. 763, 764 (462 SE2d 622) (1995).

As to the first *Barker* factor, the length of the delay, Redding's speedy trial right attached at the time of arrest. *Boseman*, supra at 731 (1). A delay of 27 months raises a threshold presumption of prejudice. Id. at 732 (1) (a). Here the delay between arrest and the appearance of the case on a trial calendar was 67 months, and the State does not dispute the consequent presumption of prejudice.

The second *Barker* factor is the reason for the delay. The trial court found that the delay was due to the State's negligence, and this finding is supported by the record. Redding's trial counsel testified that the prosecutor told him the case would be dead docketed, and counsel had the notation "D.D." on his record. The prosecuting attorney testified that he was told by others in the District Attorney's office to dead docket the case, but he could not recall whether he told defense counsel that; he "may" have told counsel the case would be dead docketed.[3] The prosecutor testified that dead docketing "was clearly what I had intended to do," and that had the State gone to trial, it would have gone to trial only against co-defendant Lloyd. The prosecutor also testified that if he had remained in the District Attorney's office and the case had come up on a trial calendar, he would have dead docketed it at that time. His testimony showed that the decision was made to dead docket the case because, given the length of the federal sentence, the State did not believe that the effort of getting Redding from federal custody for trial was worth it.

The State asserts that there is no evidence that it deliberately delayed the prosecution. However, the trial court did not find that the delay was the result of deliberate action by the State. Rather, the court found that the delay was due to the State's negligence. The State contends that without intent on its part, the delay must be considered "relatively benign." See *Hall v. State*, 240 Ga. App. 356, 357

---

[3] The court's order specifically refers to "[d]efendant's reliance on the State's representations" and it is clear that the court found that the prosecutor had, in fact, told Redding's counsel that the case would be dead docketed, and described the effect of such an action as " 'dead docketed' and closed."

(3) (b) (523 SE2d 409) (1999). However, a delay attributable to the State is a negative factor and to some extent is weighed against it, even when its circumstances are such that it may be considered "relatively benign." See *Brannen v. State*, 274 Ga. 454, 456 (553 SE2d 813) (2001); *Johnson v. State*, 268 Ga. 416, 418 (2) (490 SE2d 91) (1997); *Perry v. Mitchell*, 253 Ga. 593, 595 (322 SE2d 273) (1984). Further, at the hearing on the motion to dismiss, the State informed the court that it was unable to supply a reason for the delay, and conceded that fact would be weighed against it under *Barker*.

As to Redding's assertion of his right to a speedy trial, the third *Barker* factor, the trial court found that Redding's failure to make any effort to enforce his right to a speedy trial until after the case appeared on a calendar in 1998 was due to the State's representations that the case would be dead docketed. This finding was authorized by the evidence, and Redding's failure to assert his right to a speedy trial is not weighed against him.

Forty-six months passed between the time the State informed Redding that the case would be dead docketed and the next appearance of the case on any calendar. Given the evidence, the trial court was authorized to find that, in short, Redding did not earlier assert his right to a speedy trial because the State represented to him that the prosecution would not go forward.

The State argues that because a dead docket case may be removed from the dead docket and set for trial at any time within the statute of limitation, and that murder has no statute of limitation, even had this prosecution been placed on the dead docket, the State's representation that the case would be dead docketed could not have led Redding to believe that the prosecution was effectively over. However, the fact that a case is placed on the dead docket does not affect the constitutional right to a speedy trial. See *Underhill v. State*, 129 Ga. App. 65, 66 (1) (198 SE2d 703) (1973). "The state has the duty to bring the defendant to trial following arrest and indictment; the defendant does not." *Perry*, supra at 596.

The final *Barker* factor is prejudice to the defendant produced by the delay. Impairment of the defendant's ability to prepare his case is the most serious form of prejudice. *Barker*, supra at 532. Counsel testified that his case records are kept for three years after the close of a case and then destroyed, and that relying on the State's representation that the case would be dead docketed, he closed his file in November 1994, and destroyed the majority of his file on the case in November 1997. Similarly, an aerial photograph of the area had been given to the public defender's office and could not be found, and a scale model of the area had been destroyed; these pieces of evidence were important because the lines-of-sight of the eyewitnesses and whether they could have seen that which they claimed, would be cru-

cial issues to the defense. Since 1994, the public housing complex where the incident occurred, known as the Clark Howell portion of Techwood Homes, has been destroyed, and counsel would be unable to conduct a jury view, as he planned. The investigator who was hired in 1994 no longer had his files on the matter. A witness who gave inconsistent versions of the event had since died;[4] his version was also expected to contradict other State's witnesses. "If witnesses die or disappear during a delay, the prejudice is obvious." Id. The defense was able to identify three alibi witnesses, but they were not immediately available for trial, nor was it established that they could be; one was recovering from a cancer operation, one was believed to have moved to Florida, and one was thought to be in the local area. Two other witnesses identified in the destroyed defense files would have given descriptions of the killer's appearance that did not match Redding's appearance.

The State argues that much of the effect of the delay is due to the action of Redding's counsel, such as the destruction of his files and exhibits. However, this ignores the court's factual finding that it was the State's representation to counsel, coupled with the passage of time, that reasonably led counsel to the belief that the prosecution was concluded.

Also, the presumption of prejudice addressed in *Barker* strengthens with the passage of time and, as the delay increases, less specific harm need be demonstrated to conclude that the delay is prejudicial. *Doggett v. United States*, 505 U. S. 647, 657 (112 SC 2686, 120 LE2d 520) (1992) (dealing with an eight and one-half year delay). See also *Boseman*, supra at 734 (1) (d).

Weighing all the *Barker* factors, the trial court acted within its discretion in granting the motion to dismiss.

*Judgment affirmed. All the Justices concur.*

DECIDED MARCH 11, 2002.

*Paul L. Howard, Jr., District Attorney, Bettieanne C. Hart, Bradley R. Malkin, Alvera A. Wheeler, Assistant District Attorneys,* for appellant.

*Franklin & Hubbard, Brooks S. Franklin, William F. Holbert,* for appellee.

---

[4] No death certificate was produced, but the State conceded that if the witness was not dead, his whereabouts were unknown and he was otherwise available.