S04A0148. THE STATE v. CARR.
(598 SE2d 468)

HINES, Justice.

Weldon Wayne Carr was convicted of malice murder and first degree arson in connection with the death of his wife, Patricia Carr. On March 10, 1997, this Court reversed those convictions, returning the case to the trial court on April 15, 1997. See *Carr v. State*, 267 Ga. 701 (482 SE2d 314) (1997). On May 19, 2003, the trial court granted Carr's motion to dismiss for violation of his right to a speedy trial

under the Sixth Amendment to the Constitution of the United States. The State appeals, see OCGA § 5-7-1 (a) (1), and for the reasons that follow, we affirm.

The motion to dismiss was decided on stipulations of fact. The stipulations revealed that: after this Court's reversal, Carr and the State agreed that the State would hire a new arson expert to investigate the case, and that Carr would not seek bond; the State agreed to report on the status of the case on October 15, 1997; it did not do so, and on October 16, 1997, Carr moved for a bond and declared he was ready to stand for re-trial and was not seeking any delay; the trial court granted bond; in April 1998, the State informed the trial court that efforts to secure an expert had not been successful, and that the State "needed more time to retain an expert in order to decide whether to proceed with the case, if at all"; at a status conference in February 2001, the State announced that it would take several months to retain an expert, and that if that expert determined that the fire was not the result of arson, it was most likely that the case would not be prosecuted; at a status conference in May 2001, the State again stated that no expert had been retained, and the court set the matter down for October 25, 2001, stating that such was a "drop dead" date, and that if no expert had then been retained, the case would be dismissed; the State retained an expert on July 9, 2001; the expert's report was submitted to the State in September 2001, but did not reach a conclusion as to whether the fire was the result of arson; on October 25, 2001, the State announced it was prepared to re-try the case; and at that time, Carr declared that trial under these circumstances would violate both his agreement with the State concerning the expert, and his right to a speedy trial, and that he would move to dismiss.

A trial court's ruling on a motion to dismiss based on the right to a speedy trial found in the Federal Constitution is reviewed under the analysis set forth in *Barker v. Wingo*, 407 U. S. 514 (92 SC 2182, 33 LE2d 101) (1972).

> In *Barker v. Wingo* [. . .], the Supreme Court of the United States identified four factors to be considered by a court in determining whether an accused's constitutional right to a speedy trial had been violated. . . . (a) the length of the delay, (b) the reason for the delay, (c) the defendant's assertion of his right, and (d) the prejudice to the defendant. 407 U. S. at 530. The Supreme Court further stated that it regarded none of the factors as either a necessary or sufficient condition to a finding of a deprivation of the right of speedy trial but rather

that the factors should be considered together in a balancing test of the conduct of the prosecution and the defendant. [Cit.]

*State v. Redding,* 274 Ga. 831-832 (561 SE2d 79) (2002). "The question is whether the trial court abused its discretion in ruling that [Carr's] speedy trial rights were violated. [Cit.]" Id. at 832.

The length of the delay is measured from the return of this case to the trial court after this Court's 1997 reversal of Carr's convictions. Four years passed before the State announced it was ready for trial. "A delay of 27 months raises a threshold presumption of prejudice. [Cit.]" *Redding,* supra at 832. Here, the delay was over 50 months, and the State concedes that such a delay triggers the application of the remaining *Barker* factors. See *Boseman v. State,* 263 Ga. 730, 732 (1) (a) (438 SE2d 626) (1994).

As to the reason for the delay, the second *Barker* factor, the trial court found that the delay was attributable to the State, and thus weighed against the prosecution. The State urges that the delay should be considered to be, at most, partly the result of State negligence, but also the result of action by Carr and his counsel. Delay caused by State negligence, rather than deliberate action to impair a defense, generally is considered "relatively benign." See *Johnson v. State,* 268 Ga. 416, 418 (2) (490 SE2d 91) (1997). However, even then, "a delay attributable to the State is a negative factor and to some extent is weighed against it." *Redding,* supra at 833. Further, the trial court did not find that the delay was, in part, attributable to the defense, nor did the facts established by the stipulations require it to find that any cause of the delay was attributable to the defense. Although the State argues that the delay was caused by Carr's desire that a new arson expert be consulted after the original convictions were reversed, the only evidence before this Court is that the State willingly undertook to secure such an expert, and that for most of the time between its commitment to do so and the filing of the motion to dismiss, the State made little or no effort to fulfill that commitment.

The third *Barker* factor is Carr's assertion of his right to a speedy trial. The trial court found that Carr's failure to assert his right before October 2001 was due to the representations of the State concerning its commitment to secure a new arson expert, and that this factor would thus not be weighed against him. *Redding,* supra at 833. The record supports the trial court's factual determination.

Prejudice to the defendant that is produced by the delay is the final, and most serious, *Barker* factor. *State v. Johnson,* 274 Ga. 511, 513 (4) (555 SE2d 710) (2001). Carr has three protected interests under this factor: preventing oppressive pretrial incarceration, minimizing anxiety and concern, and limiting the chance of impairing the

defense. *Brannen v. State*, 274 Ga. 454, 456 (553 SE2d 813) (2001). The trial court looked at these interests and found that they favored Carr.

The trial court noted that Carr was held in custody for eight months after the reversal of his convictions, and found that certain conditions of that incarceration were sufficient to consider the incarceration to be oppressive and to have produced debilitating anxiety.

On the question of impairment of Carr's defense caused by the delay, the court focused upon the fact that three witnesses had either died or otherwise become unavailable. A prominent fire investigator, who would testify that there had been no arson, had died. The State argues that this does not result in any prejudice to Carr because this witness testified at Carr's earlier trial, of which a transcript was available. However, the trial court noted that this was not as valuable to Carr as having this witness, who had over 40 years experience in the field, actually testify before the jury in any retrial.

Another witness who had died was Carr's insurance broker, who would have testified at retrial that he had advised Carr to examine his insurance policies to determine, in part, whether he had adequate fire insurance; this review was part of Carr's behavior in the period of time shortly before the fire that the State deemed suspicious. See *Carr*, supra at 701.

The third witness whose participation in any retrial was impacted by the passage of time was Carr's mother. At Carr's trial, the State had asserted that Carr's act of taking old family photographs to his place of business was part of his suspicious behavior before the fire; his mother would have testified that she had asked him to package and mail to her the photographs to be viewed by other family members. However, she had developed dementia and other ailments related to age.[1] Although the State notes that transcript testimony could have been introduced here as well, the trial court was within its discretion in determining that the absence of live testimony before the jury on retrial would have impaired Carr's defense.

Additionally, the burned house had been destroyed after Carr sold it in August 1997, and the expert that the State eventually hired was not able to make a firm determination about the cause of the fire without examining the scene. The State argues that Carr voluntarily relinquished control of the crime scene, and that this actually impairs the prosecution, as the State cannot now use it to generate evidence in support of a conviction. However, there is no suggestion in the evidence that Carr sold the home in an attempt to have the scene of

---

[1] She was 91 years old when the trial court granted the motion to dismiss.

the fire destroyed, and the trial court was authorized to determine that the destruction of the scene was prejudicial to Carr's defense.

The trial court did not abuse its discretion in weighing all the *Barker* factors and granting the motion to dismiss.

*Judgment affirmed. All the Justices concur.*

DECIDED JUNE 28, 2004.

*Paul L. Howard, Jr., District Attorney, Bettieanne C. Hart, Ronald S. Boyter, Assistant District Attorneys*, for appellant.

*Garland, Samuel & Loeb, Donald F. Samuel, Cozen & O'Connor, Michael A. McKenzie*, for appellee.