S07A1308. THE STATE v. WHITE et al.
(655 SE2d 575)

CARLEY, Justice.

In May of 1999, Cedric White was killed in an exchange of gunfire with Appellees Larry and Carlos White. Appellees were arrested shortly thereafter. However, they were detained for only a short period. Apparently, Appellee Larry White was released on bond after being charged with voluntary manslaughter, and all charges against Appellee Carlos White were dropped. The State did not present the case to the grand jury until December of 2004, when a murder indictment was returned against both Appellees. Appellee Carlos White was rearrested in March of 2006, and Appellee Larry White was apprehended some months later. In December of 2006, Appellee Larry White filed a plea in bar and a motion to dismiss, alleging a violation of his constitutional right to a speedy trial. Subsequently,

Appellee Carlos White joined the motion and also moved for dismissal. After conducting a hearing, the trial court granted Appellees' motions to dismiss, finding that the delay in bringing them to trial was attributable to prosecutorial neglect and that their defense had been prejudiced. The State appeals.

1. The trial court granted Appellees' motions to dismiss on January 19, 2007. On February 12, the State filed a motion for reconsideration, to which several exhibits, including affidavits, were attached. On February 15, the State filed a notice of appeal from the grant of Appellees' motions to dismiss. On that same day, the trial court signed an order denying the State's motion for reconsideration, but that order was not entered until February 16.

After the case was docketed in this Court, the State filed a brief in which the argument that the trial court erred in granting the motions to dismiss was supported by reliance on the exhibits attached to the motion for reconsideration. Appellees moved to strike those exhibits from the record on appeal. Because Appellees' motion to strike invokes a ruling as to the scope of the record that this Court will be authorized to consider in addressing the merits of this appeal, we will first address that motion.

The State's motion for reconsideration did not extend the time for filing the notice of appeal from the grant of Appellees' motions to dismiss, and the denial of such a motion is not otherwise directly appealable. *Ferguson v. Freeman*, 282 Ga. 180, 181 (1) (646 SE2d 65) (2007). If the denial of the State's motion for reconsideration is subject to appellate review, it must be pursuant to OCGA § 5-6-34 (d). See *Patterson v. Bristol Timber Co.*, 286 Ga. App. 423, 426, fn. 4 (649 SE2d 795) (2007). Here, the order denying the motion for reconsideration was signed by the trial court on the same day that the State filed the notice of appeal, but it was not filed with the clerk until the following day. Even though an order may be signed, it is not considered to have been entered and, thus, does not become effective until it is filed with the clerk. *Titelman v. Stedman*, 277 Ga. 460, 461 (591 SE2d 774) (2003). Therefore, at the time the order denying the motion for reconsideration would otherwise have become effective, the trial court had already been divested of jurisdiction over the case pursuant to the State's previously filed notice of appeal. See *Heard v. State*, 280 Ga. 348, 349 (2) (627 SE2d 12) (2006). Because the notice of appeal divested the trial court of jurisdiction and thereby established the permissible parameters of the case on appeal, the order denying the motion for reconsideration is ineffective and does not constitute a "judgment[ ], ruling[ ], or order[ ] rendered in the case" within the meaning of OCGA § 5-6-34 (d).

Accordingly, the only order that can be considered in this appeal is the grant of Appellees' motions to dismiss. In granting those

motions, the trial court did not consider the attachments that were appended to the State's motion for reconsideration. Thus, this Court cannot consider that material, and Appellees' motion to strike is hereby granted. *South v. Bank of America*, 250 Ga. App. 747, 751 (3) (551 SE2d 55) (2001).

> 2. In examining an alleged denial of the constitutional right to a speedy trial, courts must engage in a balancing test with the following factors being considered: (1) the length of the delay; (2) the reasons for the delay; (3) the defendant's assertion of the right to a speedy trial; and (4) prejudice to the defendant. *Barker v. Wingo*, 407 U. S. 514 (92 SC 2182, 33 LE2d 101) (1972). The existence of no one factor is either necessary or sufficient to sustain a speedy trial claim, and a trial court's findings of fact and its weighing of disputed facts will be afforded deference on appeal. [Cits.]

*Williams v. State*, 277 Ga. 598, 599 (1) (592 SE2d 848) (2004). With these four *Barker v. Wingo* factors in mind, "[t]he question is whether the trial court abused its discretion in ruling that [Appellees'] speedy trial rights were violated. [Cit.]" *State v. Redding*, 274 Ga. 831, 832 (561 SE2d 79) (2002).

(a) *Length of the delay*. The constitutional right to a speedy trial attaches on the date of the arrest or when formal charges are initiated, whichever first occurs. *Wimberly v. State*, 279 Ga. 65 (608 SE2d 625) (2005). Appellees were both arrested in June of 1999, less than a month after the shooting. However, the charges against Appellee Carlos White were dismissed shortly thereafter, so his right to a speedy trial did not reattach until formal charges were initiated in December of 2004. See *Wooten v. State*, 262 Ga. 876, 878 (2) (426 SE2d 852) (1993). The motion to dismiss was filed in December of 2006. Therefore, the total length of the delay in Appellee Carlos White's case is slightly more than two years, which raises a threshold presumption that his defense was prejudiced. "[A]s the delay approaches one year it generally is 'presumptively prejudicial' . . . ." *Boseman v. State*, 263 Ga. 730, 732 (1) (a) (438 SE2d 626) (1994) (27 months). Because, after Appellee Larry White's initial arrest, a voluntary manslaughter charge remained pending, the length of the delay in prosecution of his case is approximately five and one-half years. This delay "is so extraordinarily long as to be considered presumptively prejudicial and to require the consideration of the remaining factors in the balancing test. [Cit.]" *Williams v. State*, supra at 599 (1) (a).

(b) *Reasons for the delay*. The trial court found that the police department "really didn't do anything after the initial arrest" and the

case "sat for between 2-1/2 and three years" in the "overworked and underpaid" district attorney's office which was undergoing "an organizational reshuffling." Based on these findings, the trial court concluded that "the reason for the delay is not sufficient and it shows a degree of negligence upon prosecuting counsel for the delay."

The trial court did not, however, find that there was " ' "[a] deliberate attempt to delay the trial in order to hamper the defense . . . ." [Cit.]' [Cit.]" *Nelloms v. State*, 274 Ga. 179, 180 (549 SE2d 381) (2001). "[I]f the delay attributable to the [S]tate's preparation of its case is not deliberate[,] but is negligent, it is weighted as a 'relatively benign' factor against the [S]tate. [Cits.]" *Jackson v. State*, 272 Ga. 782, 784 (534 SE2d 796) (2000).

With regard to the approximately two-year post-indictment delay, the State contends that it was, at least in part, attributable to Appellees. However, the trial court did not make such a finding. Moreover, even assuming that Appellees' post-indictment actions or inactions may have partially contributed to the delay in bringing them to trial, that still would not fully counteract the State's negligence as " 'a relatively benign but definitely negative factor.' [Cit.]" *Nelloms v. State*, supra.

(c) *Assertion of the right to a speedy trial.* With regard to this factor, the trial court found Appellees' assertion of their rights was "not unduly delayed, given all of the facts and circumstances of this case." That finding is authorized by the State's failure to seek an indictment for five and one-half years and, after the indictment had been returned, by the more than year-long delay in arresting Appellees and insuring that they had counsel to represent them in defending against the murder charge.

> Since the filing of a speedy trial demand is not a prerequisite for a plea in bar for failure to have a speedy trial on constitutional grounds, [cit.], and since [Appellees'] counsel[s] filed a demand within months after being appointed, the trial court [did not err] in . . . mitigat[ing] this factor in the balancing process. It could not be weighed heavily against [Appellees].

*Hester v. State*, 268 Ga. App. 94, 99 (3) (601 SE2d 456) (2004).

(d) *Prejudice.* According to *Barker v. Wingo*, supra, the constitutional right to a speedy trial is designed to protect three interests, " 'the last being the most important: (a) to prevent oppressive pretrial incarceration; (b) to minimize anxiety and concern of the accused; and (c) to limit the possibility that the defense will be impaired.' [Cit.]" *Williams v. State*, 279 Ga. 106, 109 (1) (d) (610 SE2d 32) (2005).

The trial court found that there was no oppressive pretrial incarceration and that Appellees did not experience any undue anxiety or concern. With regard to the third and most important factor, however, the extraordinary delay in bringing Appellees to trial raised a presumption that their defense had been hindered, and relieved them of the requirement of showing specific instances of prejudice. *Hester v. State*, supra at 99-100 (4). However, the trial court did not rely on presumptive prejudice, but found specific instances in which their defense

> was impaired . . . . [T]here was evidence that could have been collected that was not collected, there were transcripts that could have been — would without a doubt have been collected and would have been used for impeachment, there were additional witnesses. In fact, the entire crime scene had been destroyed at the time that this case was prepared for trial. And witnesses have been scattered all over after that project area had been torn down.

The State urges that the trial court's finding with regard to the unavailability of a transcript of the preliminary hearing is erroneous, because, in fact, such a hearing was never held. However, in making that assertion, the State relies only on the material attached to its motion for reconsideration. As previously noted, the trial court did not consider those attachments when it ruled in Appellees' motions, and that material has been stricken from the record on appeal. The transcript of the hearing on Appellees' motions shows that the prosecuting attorney informed the trial court that, "as far as the municipal court hearing, [she could] not dispute that [Appellees] cannot get the transcript . . . ." In addition, the lead investigator was a witness for the State at the motions hearing, and he testified that he attended the preliminary hearing and that an eyewitness who testified at that hearing gave a significantly different statement regarding the shooting than he had in his original statement. Thus, the trial court was authorized to find that a preliminary hearing had been held and that the transcript showing that a key witness made inconsistent statements was not available to the defense.

The State also contends that the trial court erred in finding that the crime scene had been destroyed. There was no direct evidence that the apartment complex where the shooting occurred had been razed. However, the undisputed testimony was that it had been condemned. In fact, the assistant district attorney who was in charge of the prosecution testified that an initial problem he encountered

in prepping the case for indictment was that the location . . . was in the process of being condemned, and so by the time that [he] kind of got out and started looking around, most of the people had already moved and there were only a few folks still left out in that complex.

Whether the apartments are no longer in existence is immaterial. It is clear that, because the complex had been condemned, most, if not all, of the witnesses to the shooting had left the crime scene. If the disbursal of the witnesses presented the State with a problem in preparing the case for indictment, then the trial court was authorized to find that it was also a source of subsequent difficulty to Appellees in preparing their defense.

The State seeks to discount the impact of other instances of alleged actual prejudice to Appellees, such as the death of a defense witness and their inability to obtain certain telephone records. However, after hearing all of the evidence, the trial court "looked at [the three] interests [protected by the *Barker v. Wingo* prejudice factor] and found that they favored [Appellees]." *State v. Carr*, 278 Ga. 124, 127 (598 SE2d 468) (2004). Based upon our review of the transcript of the hearing on Appellees' motions, we cannot determine that finding to be clearly erroneous.

In conclusion, the trial court was authorized to find that, as the result of the State's negligence, Appellees were subjected to an extraordinarily long delay in being brought to trial, that they were not dilatory in asserting their right to a speedy trial and that, as a result of the delay, their ability to defend against the belated murder charge was prejudiced. Under these circumstances, "[t]he trial court did not abuse its discretion in weighing all the *Barker* [*v. Wingo*] factors and granting the motion[s] to dismiss." *State v. Carr*, supra at 128.

*Motion to strike granted and judgments affirmed. All the Justices concur.*

DECIDED JANUARY 8, 2008.

*Paul L. Howard, Jr., District Attorney, Bettieanne C. Hart, Stephany J. Luttrell, Assistant District Attorneys,* for appellant.

*John W. Kraus, Kenya D. Berry, Stephen R. Scarborough,* for appellees.