## S09A1951. WEIS v. THE STATE.
### (694 SE2d 350)

MELTON, Justice.

In this death penalty case, Jamie Ryan Weis appeals from the denial of his motion for discharge and acquittal based on an alleged violation of his constitutional rights to counsel and a speedy trial. As explained more fully below, because the trial court did not abuse its discretion in denying Weis' motion, we affirm.

The record reveals that Weis was arrested on February 2, 2006 for the robbery, beating, and shooting death of Catherine King, a senior citizen. Weis has never retained counsel at his own expense. The trial court originally appointed lawyers from the Griffin Judicial Circuit Public Defender's Office to represent him. Several months later, however, attorneys Robert H. Citronberg and Thomas M. West were appointed to represent Weis pursuant to an agreement with the Georgia Public Defender Standards Council (the "Standards Council"), and these attorneys entered an appearance on Weis' behalf on October 12, 2006.

During the first six months of their representation of Weis, Citronberg and West were being paid, and they filed several motions on Weis' behalf and conducted an investigation of his case. By mid-March 2007, however, counsel became concerned that the lack of funding available to the Standards Council would result in counsel being unable to pay for the services of experts and for counsel themselves to continue to be paid for their services. Counsel filed several motions for continuance and for additional funds to hire

experts and to investigate the case. However, despite these motions, and consistent with counsels' concerns, the defense did not obtain funds for experts and investigators, and by September 2007, the Standards Council stopped making payments to the defense lawyers altogether. The Standards Council believed that additional funds would not be available to pay for the case until approximately June 2008, and was uncertain if, even at that time, sufficient funds would be available to move the case forward.

Citronberg and West filed an emergency motion to obtain funding, and at a November 26, 2007 hearing on the motion, it became clear that additional funding was not available. In light of the funding problem facing the Standards Council, the State moved to have Weis' counsel removed from the case so that they could be replaced with paid counsel from the Griffin Judicial Circuit Public Defender's Office — the office whose lawyers had represented Weis until being replaced by Citronberg and West. These public defenders would receive their stipulated salaries during the course of their representation of Weis, and the Standards Council would not be responsible for paying them. The trial court granted the State's motion, and counsel from the local public defender's office was appointed to replace Citronberg and West.

Weis refused to cooperate with his replacement attorneys from the public defender's office. He even stated in writing that, on the advice of counsel,[1] he did not want to speak with anyone from the public defender's office about his case. Although the public defenders were experienced attorneys who had tried death penalty cases in the past, and despite the fact that they acknowledged that they would represent Weis as their first priority, on December 10, 2007, they moved to withdraw from the case. Their stated reasons for the withdrawal included, primarily, (1) replacement counsels' concern that they would not be able to competently represent Weis in light of his refusal to cooperate with them and in light of the approaching February 2008 trial date; and (2) replacement counsels' inability to replicate the working relationship that Weis had developed with his prior attorneys and the work that the prior attorneys had done up to that point in the case. Replacement counsel renewed their motion to withdraw on January 17, 2008, again citing Weis' refusal to work with them. In this renewed motion, however, replacement counsel cited additional reasons for the withdrawal that included a lack of funding for experts, investigation, and travel; the fact that replacement counsel had not yet had an opportunity to review the extensive

---

[1] This pro bono counsel, Stephen B. Bright, made an appearance in the case for the limited purpose of representing Weis "with regard to his right to counsel and due process."

files in the case; and the public defender's office's lack of "time and expertise to conduct the extensive investigation that [was] necessary" in the case.

In February 2008, Weis brought a mandamus action against the trial judge in an attempt to force the judge to reinstate Citronberg and West as his attorneys. However, before an order was entered in the mandamus action, on April 25, 2008, the parties agreed by stipulation that Citronberg and West would be reinstated as Weis' attorneys; that the case would not be set for trial any earlier than January 2009; and that Weis would "irrevocably waive[ ] the right to seek any further continuances in the [case] based upon any alleged or actual lack of funds or manpower or time to prepare said case for trial." Based on this stipulation, on February 11, 2009, the trial court reinstated Citronberg and West as Weis' counsel.

On June 1, 2009, the trial court ordered that an evidentiary hearing take place on July 8, 2009, and that trial would commence on August 3, 2009. However, Citronberg and West still were not being paid by the Standards Council, and on June 24, 2009, counsel filed a motion to dismiss the indictment and for discharge and acquittal based on an alleged violation of Weis' right to a speedy trial.

At the July 8, 2009 evidentiary hearing, the Standards Council agreed to provide funding for Weis' defense, but at a significantly reduced amount from the amount that counsel believed was necessary in order to provide an adequate defense. The trial court denied Weis' motion for discharge and acquittal, prompting this appeal.

1. In evaluating Weis' constitutional speedy trial claim, we must consider the four-part balancing test outlined in *Barker v. Wingo*, 407 U. S. 514 (92 SC 2182, 33 LE2d 101) (1972). Under this test, the Court must examine:

> (1) the length of the delay; (2) reasons for the delay; (3) defendant's assertion of the right [to speedy trial]; and (4) the prejudice to the defendant. Standing alone, none of these factors are a necessary, or sufficient condition to a finding of deprivation of the right to a speedy trial, but rather should be considered as part of a balancing test. *Washington v. State*, 243 Ga. 329, 330 (253 SE2d 719) (1979). Thus, we must apply and weigh these factors together to determine if [Weis'] constitutional right to a speedy trial has been abridged. *Treadwell v. State*, 233 Ga. 468 (211 SE2d 760) (1975).

(Citation omitted.) *Layman v. State*, 284 Ga. 83, 84 (663 SE2d 169) (2008). On appeal, a trial court's decision to deny a motion for discharge based on an alleged speedy trial violation is reviewed

under an abuse of discretion standard. *Burns v. State*, 265 Ga. 763 (462 SE2d 622) (1995).

(a) *Length of delay*: This factor is

> to some extent a triggering mechanism. Until there is some delay which is presumptively prejudicial, there is no necessity for inquiry into the other factors that go into the balance. To trigger a speedy trial analysis, an accused must allege that the interval between accusation or arrest and trial has crossed the threshold dividing ordinary from "presumptively prejudicial" delay, since, by definition, he cannot complain that the government has denied him a "speedy" trial if it has, in fact, prosecuted his case with customary promptness. The assumption that a delay is presumptively prejudicial is improper as it can result in unnecessary judicial constitutional analysis.

(Citations, punctuation and footnote omitted.) *Wimberly v. State*, 279 Ga. 65, 66 (608 SE2d 625) (2005). As the State concedes, the three-and-a-half year period from the date of Weis' arrest to the date that his case was put on a trial calendar is presumptively prejudicial. See *Brannen v. State*, 274 Ga. 454 (553 SE2d 813) (2001) (52-month delay is presumptively prejudicial). Therefore, we consider the remaining *Barker* factors in conjunction with this factor. See *Ruffin v. State*, 284 Ga. 52 (663 SE2d 189) (2008).

(b) *Reason for delay*: Weis claims that the lack of funding for Citronberg and West to mount his defense is the primary reason for the delay in bringing his case to trial, and that, therefore, this factor should be weighed against the State. The record, however, reveals that Weis' assertion is incorrect. While a delay caused by "a systemic 'breakdown in the public defender system' could be charged to the State" (*Vermont v. Brillon*, ___ U. S. ___ (III) (C) (129 SC 1283, 173 LE2d 231) (2009) (citation and punctuation omitted)), there was no such "breakdown" of the entire "public defender system" here such that the reason for the delay could solely be weighed against the State. As explained more fully below, although the lack of funding contributed to some of the delay in this case, it was not the sole factor contributing to the delay. Weis' own behavior, and the behavior of his attorneys, also contributed to the delay, and we must "appropriately . . . take into account [Weis'] role during the . . . delay." Id. at (III) (B).

Here, Citronberg and West were being paid by the Standards Council for approximately the first six months of their service to Weis. Over the course of the next several months, payments to counsel became more sporadic, and eventually, eleven months into

their representation, non-existent. At the November 26, 2007 hearing on counsels' emergency motion to obtain funding, it became clear that the Standards Council did not have additional funds to pay counsel and that more funds would not be available for several months at the earliest. In light of the State funding issues that contributed to counsels' inability to move the case forward after the first six months of their representation of Weis, the delay in bringing the case to trial after those first six months and up to the November 26, 2007 hearing is properly weighed against the State. See *Ruffin*, supra, 284 Ga. at 61 (2) (b) (ii) ("The relevant inquiry for purposes of the second [*Barker*] factor is not whether the prosecutor or the accused bears more responsibility for the delay, but 'whether the government or the criminal defendant is more to blame for that delay' ") (footnote and emphasis omitted). However, at the November 26, 2007 hearing, in order to alleviate the Standards Council's funding issues and to allow the case to move forward, the trial court appointed paid counsel from the local public defender's office that the Standards Council did not have to pay. Thus, although there were funding issues that had contributed to the delay up to the point of the November 26, 2007 hearing, the "public defender system" had not broken down from the lack of funding at that point, as there were attorneys available within the public defender system to continue the case. Indeed, there can be no "systemic breakdown in the public defender system" (*Vermont v. Brillon*, supra) when there are still attorneys within that system who are available to represent the criminal defendant. Accordingly, to the extent that the delay caused by the lack of funding is attributable to the State, it can only be weighed against the State for the months leading up to the November 26, 2007 hearing when new counsel was appointed for Weis.

Even though Weis preferred to have Citronberg and West as his attorneys, and we have held that " 'it is an abuse of discretion to deny the defendant's request to appoint the counsel of his preference' " where that choice " 'is supported by objective considerations favoring the appointment of the preferred counsel,' " we have also explained that those cases involved " 'no countervailing considerations of comparable weight.' " *Grant v. State*, 278 Ga. 817, 817 (607 SE2d 586) (2005) (quoting *Amadeo v. State*, 259 Ga. 469, 469 (384 SE2d 181) (1989)). Seeking to move the case forward in an effort to prevent a violation of the constitutional speedy trial requirement surely qualifies as a "countervailing consideration" justifying the appointment of replacement counsel, even over the defendant's objection. See *State v. Reeves*, 11 So3d 1031, 1064-1065 (La. 2009) ("insoluble" funding problem relating to attorneys for state-wide Capital Defense Project who had been representing defendant supported the substitution of the local public defender over the defen-

dant's objection). While the constitutional speedy trial provisions primarily safeguard the defendant's rights, they also recognize the public's interest — including the interest of crime victims — in the resolution of criminal cases without unnecessary delay, and the prosecutor and the trial court have a responsibility to protect those interests. See *Barker v. Wingo*, supra, 407 U. S. at 519 (II) ("The right to a speedy trial is generically different from any of the other rights enshrined in the Constitution for the protection of the accused. In addition to the general concern that all accused persons be treated according to decent and fair procedures, there is a societal interest in providing a speedy trial which exists separate from, and at times in opposition to, the interests of the accused"); id. at 527 (III) ("[S]ociety has a particular interest in bringing swift prosecutions, and society's representatives are the ones who should protect that interest"). See also *Zedner v. United States*, 547 U. S. 489 (III) (A) (126 SC 1976, 164 LE2d 749) (2006) (discussing the public interest in a speedy trial in the context of the federal Speedy Trial Act). In this regard, the trial court took appropriate action by appointing the public defenders to represent Weis.

Once the new counsel from the public defender's office had been appointed to the case, Weis refused to work with them. This action by Weis caused further delay by making it nearly impossible for his new attorneys to move the case forward, and such delay must necessarily be weighed against Weis. *Jones v. State*, 273 Ga. 231 (2) (539 SE2d 154) (2000). Indeed, even *Lane v. State*, 2010 Ala. Crim. App. LEXIS 2, cited by the dissent, does not support the proposition that Weis was entitled to rebuff his newly appointed counsel and insist on keeping his preferred counsel under the circumstances of this case, as "[a] criminal defendant cannot use the right to counsel of choice as a means to delay judicial proceedings." (Citations and punctuation omitted.) Id. at 47. Further, the problem created by Weis' refusal to cooperate with his replacement attorneys was exacerbated by pro bono counsel for Weis, who actually *advised* Weis not to work with his replacement attorneys. The actions of Weis' pro bono counsel must also be charged against Weis for purposes of our analysis. *Vermont v. Brillon*, supra, at (III) (C) ("delays caused by defense counsel are properly attributed to the defendant"). In fact, over the course of the entire fifteen-month period that Citronberg and West were removed from the case, Weis made no effort to work with his replacement attorneys and instead made every effort to make sure that the case could not go forward without his preferred attorneys — even going as far as filing a mandamus action against the trial judge in an attempt to force the judge to place Citronberg and West back onto the case. In this respect, the record reveals that, here, "[a]bsent [Weis'] deliberate efforts to force the withdrawal of [his replacement

attorneys], no speedy-trial issue would have arisen. The effect of these . . . events [must be] factored into [our] analysis of [the] delay." Id. at (III) (B). See also *Jones*, supra, 273 Ga. at 233 (2) (actions of defendant who "frequently refused to cooperate with his appointed counsel and repeatedly sought to have them replaced" were weighed against him for purposes of speedy trial analysis).

Further, the efforts of Weis' preferred counsel to be placed back onto the case, instead of allowing the case to move forward with replacement counsel, also caused additional delay. Specifically, despite the fact that (1) Citronberg and West asserted that they could not go forward without additional funding; (2) Citronberg and West knew as early as November 2007 that no additional funding would be available for them for at least five months; and (3) the trial court had appointed competent attorneys from the public defender's office in order to move the case forward; Citronberg and West nevertheless fought to be placed back onto the case. Being placed back on the case, however, would not change the fact that no funds were immediately available to pay them, and would not change the fact that they knew that additional funds might not be available to pay them if they were placed back onto the case.[2] In short, Citronberg and West fought to place themselves back onto a case that they claimed that they could not move forward due to a lack of funding, knowing the strong possibility that no additional funding would be immediately available to them to allow them to move forward with the case in the manner that they desired. Not only did such efforts further delay any trial, they also undermined the trial court's efforts to *avoid* a speedy trial issue by having appointed replacement counsel in the first place. Under such circumstances, Citronberg and West cannot show that their failure to be paid has caused the delay here, as the delay was caused, not by funding issues, but by counsels' own actions in insisting on being reassigned to a case in which they knew that they likely could not be paid (when failing to be paid was the very reason that they claimed that they could not move forward with the case), and in which they knew that replacement counsel had already been provided to their former client. Accordingly, the delay resulting from these actions must be weighed against Weis. *Vermont v. Brillon*, supra, at (III) (C). See also *Jones*, supra, 273 Ga. at 233 (2) (delay caused by motions of defense counsel to have two trial judges recused

---

[2] The April 25, 2008 stipulation that Citronberg and West entered with the State in their effort to be reassigned to Weis' case reveals that they were well aware that they might not be immediately paid if they were reinstated to the case. Again, as part of the stipulation, Citronberg and West agreed that they would not "seek any further continuances in the [case] based upon *any alleged or actual lack of funds* or manpower or time to prepare said case for trial."

from case could not be weighed against State).

The public defender's desire to be removed from the case does not change the result, as defense counsels' "unwillingness to move the case forward may not be attributed to the State." (Citation and punctuation omitted.) *Vermont v. Brillon*, supra, at (III) (A). Even though the public defenders did not receive all the funds that they requested in the case, this did not change the fact that the attorneys themselves were being paid to represent Weis, and that they had a responsibility to move the case forward by representing Weis to the best of their ability. See, e.g., Ga. State Bar Rule 1.3 ("A lawyer shall act with reasonable diligence and promptness in representing a client. Reasonable diligence as used in this Rule means that a lawyer shall not without just cause to the detriment of the client in effect willfully abandon or willfully disregard a legal matter entrusted to the lawyer."); *Miller v. State*, 245 Ga. 137 (263 SE2d 441) (1980) (denying counsel's motion to withdraw despite counsel's belief that client's defense was no longer viable). See also *Arrington v. State*, 286 Ga. 335, 338 (6) (687 SE2d 438) (2009) (trial court did not abuse its discretion by failing to provide funds for mitigation specialist where defendant "did not establish that the services of a mitigation specialist . . . were critical to his defense or that without such assistance his trial would be rendered unfair") (citation omitted). To the extent that the public defenders had concerns about their ability to *effectively* represent Weis, the time at which to address those concerns would be through Weis pursuing an ineffective assistance claim against them, if necessary, *after* trial, not for Weis to seek discharge and acquittal based on an alleged speedy trial violation where Weis' own refusal to work with replacement counsel, and replacement counsel's own unwillingness to move the case forward, contributed to the delay of the trial. In this regard,

> the United States Supreme Court has . . . stated that, as long as counsel is not constitutionally ineffective, the defendant must "bear the risk of attorney error." [Cit.] To the extent [that Weis'] argument implicates a potential claim of ineffective assistance of counsel, we have not been presented with this issue and, in any event, it would be premature for this Court to address it at this juncture.

*Commonwealth v. Baird*, 975 A2d 1113, 1119, n. 4 (Pa. 2009). To the extent that replacement counsel may have also been concerned that trial court errors would hinder their representation of Weis, the time to address such errors would be through an appeal, not through withdrawing from the case. See *Arrington*, supra; *Miller*, supra.

We therefore conclude that, in balancing the reasons for the

delay that are attributable to the State against those that are attributable to the defendant here, this *Barker* factor must be weighed against Weis.

(c) *Assertion of right*: Weis did not assert his right to a speedy trial until June 24, 2009, almost a month after this case had been placed on an August 3, 2009 trial calendar. He claims that this is the fault of the State due to funding issues that left him without his preferred counsel for several months. However, as explained above, it was Weis' own refusal to work with replacement counsel, his insistence on trying to reinstate counsel that was not being paid, and his preferred counsels' actions, that contributed to the delay of Weis' case moving forward. In this connection, it is not the fault of the State that Weis did not assert his right in a more timely manner. Accordingly, this factor will be weighed against Weis. See, e.g., *Marshall v. State*, 286 Ga. 446 (1) (c) (689 SE2d 283) (2010) (Where defendant "waited several years to assert his right to a speedy trial, until the case was nearing the time for trial, this [*Barker*] factor, which must be given 'strong evidentiary weight,' weigh[ed] against [defendant]") (citation omitted); *Harris v. State*, 284 Ga. 455 (667 SE2d 361) (2008).

(d) *Prejudice to defendant*: Finally, we consider the prejudice to the defendant "based on three factors: (1) whether there has been oppressive pre-trial incarceration; (2) the anxiety and concern of the accused; and (3) the possibility of harm to the accused's defense." *Bowling v. State*, 285 Ga. 43, 46 (1) (d) (673 SE2d 194) (2009). Here, there has been no oppressive pre-trial incarceration, as Weis has made no showing that he has been subjected to substandard conditions in the county jail where he has been housed. Further, even though Weis and the dissent focus much of their attention on the anxiety and concern that Weis has experienced while incarcerated, the record reveals that this factor should not weigh as heavily in Weis' favor as Weis and the dissent would contend. Indeed, as Weis concedes in his reply brief, independent of any time that Weis spends in jail, he already suffers from "major mental illnesses that cause [him] suffering . . . [including] major depression, severe anxiety, and schizophrenia which causes both auditory and visual hallucinations." Even though Weis' anxiety became worse during the time that he has been in the county jail, it cannot be determined from the record whether or not the worsening of his mental state was a function of his changing medications, his pre-existing mental illnesses, his time in jail, or some combination of all of these factors. What can be determined from the record, however, is that Weis did not experience the type of lengthy incarceration in a county jail that would, by its very nature, cause anxiety beyond that which is normally associated with incarceration in general. See *Layman*,

supra, 284 Ga. at 86 (where defendant's "pretrial incarceration was not excessive," and defendant claimed "that his pretrial incarceration has caused him great anxiety and concern for his health," this factor did not weigh in defendant's favor, as "[a]nxiety and concern of the accused are always present to some extent, and . . . absent some unusual showing are not likely to be determinative in defendant's favor") (citation and punctuation omitted).

In any event, the possibility of harm to the accused's defense is the "most serious" of the elements to be considered regarding potential prejudice to the defendant. See *Barker*, supra, 407 U. S. at 532. With respect to this element, Weis has not shown that any witnesses are unavailable for his case-in-chief, and, as explained under the other *Barker* factors considered above, he has not shown any intentional delay by the State or egregious persistence in failing to prosecute that would lead to the conclusion that this element weighs in his favor.[3] See *Doggett v. United States*, 505 U. S. 647 (III) (B) (112 SC 2686, 120 LE2d 520) (1992).

2. For all of the foregoing reasons, prejudice to Weis cannot be presumed from inadequate or delayed funding by the Standards Council in this case, as such funding deficiency shows neither an intentional nor an egregious delay on the part of the State. Accordingly, the trial court did not abuse its discretion in denying Weis' motion for discharge and acquittal.

*Judgment affirmed. All the Justices concur, except Hunstein, C. J., Benham and Thompson, JJ., who dissent.*

THOMPSON, Justice, dissenting.

I believe the majority wrongly places the blame for the delay in this case on the defendant, rather than on the State, where it rightly belongs. Accordingly, I dissent.

Weis was arrested on February 2, 2006, and charged with murder and other crimes in connection with the death of Catherine King. Six-and-a-half months later, on August 25, the State filed a notice of intent to seek the death penalty. Defense counsel, Robert H. Citronberg and Thomas M. West, entered appearances on behalf of Weis on October 12, 2006.

On November 22, 2006, a second indictment was lodged against Weis. That was followed by a second notice of intent to seek the death penalty on December 11, 2006. Weis was arraigned on February 9, 2007, more than one year after his arrest.

---

[3] Even though Weis contends that his mother, a potential mitigation witness, died in November 2009, we must emphasize that the delay brought about by Weis and his attorneys, and not the funding issues faced by the Standards Council, delayed the trial of this case from August 3, 2009, when this witness would have been available.

In the meantime, defense counsel filed a number of motions for a continuance to obtain funds to investigate the case. The motions were prompted by the fact that the Public Defender Standards Council was not being adequately funded and was unable to pay for experts to assist Weis in his defense. The motions were denied. In September 2007, due to a lack of funds, the Standards Council stopped making payments to compensate defense lawyers.

Defense counsel filed an emergency motion to obtain funding, pointing out that they were not being paid and that they were still without funds to hire experts. On November 26, 2007, at a hearing on the motion, Mack Crawford, director of the Standards Council, testified that funds to pay defense counsel were depleted and he was unable to state when they would be available. In light of that testimony, the district attorney moved the court to replace defense counsel with attorneys from the local public defender's office.[4] The court granted the motion over Weis' objection. Weis timely moved the trial court to reconsider the removal of his previous defense counsel; the public defenders simultaneously moved to withdraw as counsel. Both motions were denied.

On January 17, 2008, the public defenders again moved to withdraw as counsel, pointing out their "lack of time and expertise to conduct the extensive investigation that is necessary" in this death penalty case and the fact that they were unable to obtain funds for a mitigation specialist. Three weeks later, Weis brought a mandamus proceeding against the trial judge, seeking to have his original defense counsel, Citronberg and West, reinstated. Thereafter, on April 25, 2008, the parties stipulated that original defense counsel would be reinstated; and the Standards Council approved funding for the representation of Weis in the amount of $255,000. Those funds were never made available, however, and on December 31, 2008, Weis filed a second petition for mandamus. This time, Weis aimed his petition at Crawford to require him to sign a contract and provide the funds promised for the defense.

The trial court reinstated Weis' original defense counsel on February 11, 2009, 15 months after they were dismissed by the trial court. However, they were still not compensated by the Standards Council, which refused even to agree to provide a sum certain for Weis' defense.

Four months later, on June 1, 2009, the trial court ordered that an evidentiary hearing take place on July 8, and that trial would

---

[4] The Standards Council would not have to provide legal fees for the public defender because these lawyers would receive their stipulated salaries in the course of their representation.

commence on August 3. Weis, who was still without paid counsel or funds to hire an investigator for his defense, moved to dismiss the indictment, alleging the trial court denied his right to counsel and a speedy trial. He followed with a motion for discharge and acquittal.

At the hearing on July 8, Crawford appeared and agreed to provide funding for defense counsel in the amount of $75,000. He also agreed to pay $40,000 for costs associated with investigating the case. These amounts were to be paid into the registry of the court. The trial court denied Weis' motions to dismiss the indictment and for discharge and acquittal.

The Sixth Amendment to the Constitution of the United States, as well as the Constitution of this State, Art. I, Sec. I, Par. XI, guarantee that an accused shall be given a speedy trial. These rights accrue at the time of arrest, or the bringing of formal charges, whichever is earlier. *Boseman v. State*, 263 Ga. 730, 731 (438 SE2d 626) (1994).

> In *Barker v. Wingo*, 407 U. S. 514 (92 SC 2182, 33 LE2d 101) (1972), the Supreme Court of the United States identified four factors to be considered by a court in determining whether an accused's constitutional right to a speedy trial had been violated. These factors are: (a) The length of the delay, (b) the reason for the delay, (c) the defendant's assertion of his right, and (d) the prejudice to the defendant. 407 U. S. at 530. The Supreme Court further stated that it regarded none of the factors as either a necessary or sufficient condition to a finding of a deprivation of the right of speedy trial but rather that the factors should be considered together in a balancing test of the conduct of the prosecution and the defendant.

*Washington v. State*, 243 Ga. 329, 330 (1) (253 SE2d 719) (1979). My examination of these factors leads me to conclude that the trial court abused its discretion in ruling that Weis' right to a speedy trial was not violated. *State v. Carr*, 278 Ga. 124, 126 (598 SE2d 468) (2004).

a. *Length of delay.* The length of delay factor serves a dual function. First, a reviewing court must determine whether the delay was sufficiently long so as to be considered "presumptively prejudicial." If so, the court puts the case through the *Barker* analysis and looks at the delay factor a second time to weigh the length of delay in conjunction with the other factors. "This latter enquiry is significant to the speedy trial analysis because . . . the presumption that pretrial delay has prejudiced the accused intensifies over time." *Doggett v. United States*, 505 U. S. 647, 652 (112 SC 2686, 120 LE2d 520) (1992); *Ruffin v. State*, 284 Ga. 52, 57 (663 SE2d 189) (2008).

The delay in this case, spanning the time between Weis' arrest and the filing of his motion to dismiss, exceeds three-and-a-half years and, as the majority concludes, is presumptively prejudicial. See *Doggett*, 505 U. S. at 652, n. 1 (delay is "presumptively prejudicial" as it approaches one year). Furthermore, even in a capital case such as this, a delay exceeding three-and-a-half years is too long. This is especially so where, as here, defendant has been incarcerated during the entire time. See *Ruffin*, supra. Accordingly, this factor should be weighed against the prosecution.

b. *Reason for the delay.* The record does not show that the prosecution intentionally delayed this case to gain a tactical advantage. Thus, this factor is not weighted *heavily* against the prosecution. *Barker*, 407 U. S. at 531. Regardless of its motive, however, it is clear to me that the State is to blame for the delay. The prosecution took an inordinate amount of time to decide whether to seek the death penalty. The Public Defender Standards Council, a state agency, failed to adequately fund the defense[5] even though it was charged with the responsibility to provide effective legal representation to indigent defendants.[6] The *prosecution* suggested replacing Weis' original counsel with public defenders to remedy the state's budgetary problems. This suggestion added to the delay because, unlike original counsel, the public defenders were unfamiliar with the case, did not have a working relationship with Weis, and lacked time and expertise to handle this death penalty case. See generally *Grant v. State*, 278 Ga. 817 (607 SE2d 586) (2005). Finally, when the Standards Council ultimately promised to provide funds to pay defense counsel and to hire an investigator, it did so on the eve of trial and at a steep discount, leaving Weis with little time and no real ability to mount a defense.

The prosecution asserts that it cannot be blamed for the Standards Council's failure to provide funds. However, the Standards Council is a state actor, an arm of the government. Thus, any delay or prejudice attributed to the Council's budgetary problems and its refusal to provide funds for the defense must be laid at the feet of the prosecution. See *Ruffin*, supra at 61 (relevant inquiry is not whether *prosecutor* or defendant is responsible for delay but whether *government* or defendant is responsible for delay).

*Vermont v. Brillon*, ___ U. S. ___ (129 SC 1283, 1292, 173 LE2d 231) (2009), cited by the majority, is not apposite for the simple reason that defense counsel were not responsible for the delay.

---

[5] The Standards Council's early promises to provide adequate funds for defense counsel and an investigator went unfulfilled. For most of the time, defense counsel were not paid at all.

[6] OCGA § 17-12-1 et seq.

Rather, contrary to the majority's reasoning, this case does fall within the exception acknowledged in *Brillon*, i.e., a "breakdown in the public defender system," which should be attributed to the State. See also *Barker*, supra at 538 (delay is not justified because funds are lacking and "each case must await its turn") (White, J., concurring). That is because, were it not for the State's failure to provide funds, the statewide public defender system would have worked to provide Weis with counsel and permit him to continue with counsel of his choice.

The majority posits that defendant himself is responsible for the delay because he refused the assistance of substitute counsel who were appointed to solve the State's budget impasse. I cannot accept this position. First, the public defenders acknowledged that they were inadequately prepared to defend a capital case and that without additional funds for investigators and experts it would not be feasible to do so. For this reason, they themselves asked to be allowed to withdraw as counsel. Second, and more fundamentally, defendant was entitled to proceed to trial with his original counsel, "who had earned his trust, confidence, and allegiance [and] were thoroughly familiar with the defendant's case." *Amadeo v. State*, 259 Ga. 469, 470 (384 SE2d 181) (1989). Defendant should not have been forced to choose between original counsel and new, unfamiliar counsel in order to seek a speedy trial. The State's budgetary problems did not justify the removal of defendant's original counsel. See *Morris v. Slappy*, 461 U. S. 1, 23, n. 5 (103 SC 1610, 75 LE2d 610) (1983) ("[T]he considerations that may preclude recognition of an indigent defendant's right to choose his own [court-appointed] counsel, such as the State's interest in economy and efficiency . . . should not preclude recognition of an indigent defendant's interest in continued representation by an appointed attorney with whom he has developed a relationship of trust and confidence.") (Brennan, J., concurring in result). See also *Lane v. State*, 2010 Ala. Crim. App. LEXIS 2 (decided Feb. 5, 2010) (" 'once counsel is appointed to represent an indigent defendant, whether it be the public defender or a volunteer private attorney, the parties enter into an attorney-client relationship which is no less inviolable than if counsel had been retained. To hold otherwise would be to subject that relationship to an unwarranted and invidious discrimination arising merely from the poverty of the accused' ").

It is beyond question that the State is required to provide appointed counsel and expert assistance to indigent criminal defendants. *Ake v. Oklahoma*, 470 U. S. 68 (105 SC 1087, 84 LE2d 53) (1985); *Gideon v. Wainwright*, 372 U. S. 335 (83 SC 792, 9 LE2d 799) (1963). Thus, if the State wants to seek the death penalty against an indigent defendant, it must provide adequate funds for a full and

vigorous defense. The State cannot shirk this responsibility because it is experiencing budgetary constraints. It still must fulfill its constitutional obligation to bring those accused of committing crimes to trial in a speedy manner. "[T]he short and perhaps the best answer to any objection based upon expense was given by the Supreme Court of Wisconsin in a case much like the present one: 'We will not put a price tag upon constitutional rights.' [Cit.]" *Smith v. Hooey*, 393 U. S. 374, 380, n. 11 (89 SC 575, 21 LE2d 607) (1969).

The bottom line here is that the State should not be allowed to fully arm its prosecutors while it hamstrings the defense and blames defendant for any resultant delay. This factor should be weighed against the prosecution because "the ultimate responsibility for such circumstances must rest with the government rather than with the defendant." *Barker*, supra at 531.

c. *The assertion of the right to speedy trial.* Weis did not assert his speedy trial right until the case was put on a trial calendar. Ordinarily, such a delay would lead this Court to weigh this factor against the defendant. In this case, however, Weis found himself on the horns of a dilemma. He made numerous requests to fund his defense, all to no avail.[7] Until he was given funds to mount a defense, he could not prepare for trial. And if he could not prepare for trial, it would have been reckless to ask for a speedy trial. Under these circumstances, this factor should not be weighed against Weis. See *State v. Redding*, 274 Ga. 831 (561 SE2d 79) (2002) (defendant's failure to request speedy trial until case appeared on the calendar was not weighed against him in light of the prosecution's representation that case would be placed on dead docket).

d. *The prejudice to the defendant.* The right to a speedy trial is essential to protect three basic demands of the criminal justice system: to prevent undue and oppressive pretrial incarceration, to minimize excessive anxiety and concern, and to limit the possibilities that excessive delay will impair a defendant's ability to prepare and defend the case. *United States v. Ewell*, 383 U. S. 116, 120 (86 SC 773, 15 LE2d 627) (1966). "Of these, the most serious is the last, because the inability of a defendant adequately to prepare his case skews the fairness of the entire system." *Barker*, supra at 532. I believe the denial of a speedy trial in this case compromised Weis' speedy trial protections in the last two ways.

Courts have recognized that anxiety and concern is present to some extent in every criminal case. See, e.g., *Jackson v. State*, 272 Ga. 782 (534 SE2d 796) (2000). Thus, anxiety and concern will not

---

[7] Ultimately, on the eve of trial, Weis was promised some funds, but not before he filed a petition for mandamus against Crawford.

weigh in a defendant's favor in the absence of unusual circumstances suggesting he suffered excessive anxiety and concern impacting upon his health or finances. See *Boseman v. State*, supra. Weis has made such a showing. The record demonstrates that he suffers from severe depression and anxiety and experiences visual and auditory hallucinations. Although he has been given medications[8] for his mental illnesses, his condition worsened during his confinement and led to three suicide attempts. See in this connection *United States v. Dreyer*, 533 F2d 112, 115, 116 (3rd Cir. 1976).

As to the last type of prejudice, impairment of the ability to prepare a defense, *Doggett* makes clear that such prejudice will not be presumed if the delay is for a legitimate reason; that it will "present an overwhelming case for dismissal" if the delay is intentional; and that prejudice will be presumed where the delay is caused by government negligence amounting to an "egregious persistence in failing to prosecute." Id. at 656, 657. As for the presumption of prejudice, *Doggett* concluded that "affirmative proof of particularized prejudice is not essential to every speedy trial claim" because "excessive delay presumptively compromises the reliability of a trial in ways that neither party can prove or, for that matter, identify." Id. at 655.

Inasmuch as the three-and-a-half year delay in this case stems from the government's failure to fund the defense, I would not require Weis to demonstrate particularized prejudice. Rather, I would presume that the delay compromises Weis' ability to present an adequate defense. Id. I reach this conclusion, in part, knowing that in any case, and particularly in a death penalty case, defense counsel must investigate the facts and mitigating circumstances at the earliest opportunity, and that, here, defense counsel were stymied in their ability to carry out that task. At the same time, the prosecution, which was funded consistently, had every opportunity to complete its investigation in preparation for trial.

The majority concludes that the prejudice factor must be weighed against Weis because he cannot point to evidence that has gone missing or witnesses who have become unavailable. This argument cannot withstand scrutiny. As noted above, prejudice is to be presumed where it stems from the government's failure to prosecute for reasons which are simply not legitimate. The failure to move this case forward is the direct result of the government's unwillingness to meet its constitutional obligation to provide Weis with legal counsel and the funds necessary for a full investigation.

---

[8] Weis has been given Seroquel, Thorazine, Haldol, Cogentin, Prozac and Klonopin.

This failure cannot be justified,[9] and it casts doubt upon the fairness and reliability of a trial in ways that neither Weis, nor the prosecution, can be expected to identify. Id. Thus, it is not incumbent upon Weis to demonstrate actual prejudice. See *Moore v. Arizona*, 414 U. S. 25 (94 SC 188, 38 LE2d 183) (1973) (rejecting "notion that an affirmative demonstration of prejudice was necessary to prove a denial of the constitutional right to a speedy trial"). See also *Barker*, supra at 532 ("If witnesses die or disappear during a delay, the prejudice is obvious. There is also prejudice if defense witnesses are unable to recall accurately events of the distant past. Loss of memory, however, is not always reflected in the record because what has been forgotten can rarely be shown.").

Weis *has* demonstrated prejudice insofar as his pretrial detention has impacted negatively on his mental health. Moreover, the presumption is that he has been prejudiced in his ability to prepare a defense. Accordingly, this last, and most serious factor, weighs against the prosecution. See *State v. Carr*, supra.

None of the four factors identified in *Barker* are

> a necessary or sufficient condition to the finding of a deprivation of the right of speedy trial. Rather, they are related factors and must be considered together with such other circumstances as may be relevant. In sum, these factors have no talismanic qualities; courts must still engage in a difficult and sensitive balancing process. But, because we are dealing with a fundamental right of the accused, this process must be carried out with full recognition that the accused's interest in a speedy trial is specifically affirmed in the Constitution.

*Barker*, supra at 533.

This fundamental constitutional right should be examined with the knowledge that where, as here, a defendant's life is in jeopardy, the Court must be "particularly sensitive to insure that every safeguard is observed." *Gregg v. Georgia*, 428 U. S. 153, 187 (96 SC 2909, 49 LE2d 859) (1976). With this in mind, I would balance the four factors set forth in *Barker* and conclude that Weis has been denied his constitutional right to a speedy trial.

I am authorized to state that Chief Justice Hunstein and Justice Benham join in this dissent.

---

[9] This is not a case in which defense counsel are trying to exact exorbitant fees from the state coffers; on the contrary, counsel are simply seeking to fulfill their constitutional mandate to provide effective representation.

DECIDED MARCH 25, 2010 —
RECONSIDERATION DENIED APRIL 9, 2010.

*Robert H. Citronberg, Thomas M. West, Stephen B. Bright*, for appellant.

*Scott L. Ballard, District Attorney, Robert W. Smith, Jr., Assistant District Attorney, Thurbert E. Baker, Attorney General, Patricia B. Attaway Burton, Senior Assistant Attorney General*, for appellee.