## A11A1426. WARD v. THE STATE.
### (715 SE2d 818)

BARNES, Presiding Judge.

Marques Ward appeals the denial of his motion to dismiss the criminal charges against him, contending the 34-month delay between his arrest and motion violated his right to a speedy trial under the Sixth Amendment of the United States Constitution. Because the trial court did not abuse its discretion in denying the motion, we affirm.

In this case, Ward was arrested in February 2008 on two counts each of armed robbery, aggravated assault, and kidnapping. In May 2008, the court appointed a public defender to represent Ward, and the attorney appeared at Ward's arraignment in June 2008. The lawyer filed discovery motions, and in July 2008 the trial court granted Ward a $500,000 bond, which Ward was unable to post. On August 4, 2008, Ward's public defender moved to withdraw as the attorney of record because his contract with the Northern Circuit Public Defender's Office expired on June 30, 2008, and he had been unsuccessful in his attempts "to make arrangements with both the Northern Circuit Public Defender's Office and the Georgia Public Defender's Standards Council to provide remuneration or, at a minimum, provide reimbursement of actual expenses." Forcing him to represent Ward with no promise of payment was unconstitutional and would cause him a "true and severe economic hardship," he

argued. The trial court granted the motion on August 4, 2008 and relieved the lawyer from representing Ward.

On September 25, 2008, Ward moved the court to appoint counsel for him, noting that he had been found indigent, that the public defender's office had been found to have a conflict as it represented a co-defendant, and that his previously-appointed counsel had been allowed to withdraw "due to lack of funding for conflict cases."[1] In October 2008, Ward's case was transferred to a different superior court judge, and on January 7, 2009 a new attorney entered an appearance as counsel for Ward. Ward later explained at a hearing on his motion to dismiss that his family had scraped together enough money to hire this lawyer because Ward had been in jail for almost a year without a lawyer.

In late January 2009, Ward's retained counsel filed a demand for jury trial, pre-trial motions, and a motion to reduce Ward's bond, and on March 31, 2009, the trial court reduced Ward's bond to $200,000. In July 2009, the trial court issued an order finding that Ward was entitled to appointed counsel and that the Public Defender of the Northern Judicial Circuit had a "serious potential conflict of interest," and appointed a new attorney to represent Ward. No entry of appearance from that attorney appears in the record, and in August 2009, Ward's retained counsel filed another motion to reduce Ward's bond, seeking to be allowed to post "a reasonable property bond." Apparently the motion was scheduled for a hearing on August 20, 2009, but counsel submitted a conflict letter, and the next document in the record is an identical motion to reduce the bond, filed on January 22, 2010. After a hearing, the trial court on February 12, 2010 denied Ward's motion to reduce his bond.

Conflict letters in the record indicate that Ward's case was set for a motions hearing on March 5, 2010, for a calendar call on June 1, 2010, and for trial on June 21, 2010. On June 24, 2010, the trial court issued an order specially setting Ward's case for trial beginning August 2, 2010. Also in July 2010, Ward's appointed counsel moved for permission to withdraw as Ward's lawyer and filed conflict letters noting that he intended to appear for Ward's specially set trial on August 2, 2010. The case apparently was not tried on that day, as Ward's counsel subsequently submitted a conflict letter indicating that Ward's case was set for a calendar call on October 4, 2010. Counsel also filed another motion seeking permission to withdraw as Ward's lawyer on October 27, 2010, which the trial court denied that same day. Additional conflict letters indicate that Ward's case was set

---

[1] The motion was drafted and signed by Ward's former counsel and another attorney as "amicus curiae."

for a hearing on November 3, 2010, and for trial on November 8, 2010.

On November 8, 2010, Ward filed in open court a motion to dismiss the case "on the 6th Amendment ground that 34 months have passed without trial." He argued that his defense was prejudiced by the delay, which was caused by the State, and that the delay caused unnecessary pre-trial detention and emotional distress. The trial court noted during the motion hearing that the case had been called for trial at least twice after retained counsel was hired in January 2009. On one of these two occasions, Ward was "paraded . . . across the courtroom in shackles in front of the [potential jurors]," and the court concluded that the best course of action would be to obtain a different jury panel. The court specially set the case "as quickly as possible" for August 2010, but then granted the request of Ward's co-defendant for a continuance until the November 2010 trial calendar. The trial court found that these delays were not attributable to Ward.

The court set November 3, 2010, as a day to hear pre-trial motions but Ward's counsel submitted a conflict letter and did not attend. At that time, no motion to dismiss had been filed, but when the court asked trial counsel to attend procedural discussions before trial on the morning of November 8, 2010, Ward's counsel "indicated he wanted to file a motion and was going to go write one out." The court permitted him to do so, then held the motion hearing at which Ward testified. After the trial court orally denied the motion to dismiss, Ward filed a notice of appeal in open court and argued he had a right to an immediate direct appeal because his motion was neither frivolous nor dilatory. The court did not call the case for trial, noting that any delay in trying the case from that point forward was attributable to Ward. On December 13, 2010, the trial court issued a written order denying the motion, finding as a matter of law that the delay had not been caused by the prosecution and had not substantially prejudiced Ward's defense.

On appeal, Ward contends that the trial court erred in denying his motion to dismiss due to a violation of his right to a speedy trial. Both the United States and Georgia Constitutions grant defendants in criminal cases a right to a speedy trial. U. S. Const. Amend. VI; Ga. Const. Art. I, Sec. I, Par. XI (a). When considering a motion to dismiss on this ground, the court conducts a two-tier analysis. Under the first tier, the court considers whether the delay is long enough to be presumptively prejudicial, and if so, then it considers under the second tier whether the delay constitutes a speedy trial violation. *Brewington v. State*, 288 Ga. 520, 521 (1) (705 SE2d 660) (2011). In determining whether the delay violated the defendant's speedy trial right, the court considers (1) whether the delay is uncommonly long; (2) the reason for the delay, and whether the government or the

defendant is more responsible; (3) the defendant's assertion of the right to a speedy trial; and (4) the prejudice to the defendant. See *Barker v. Wingo*, 407 U. S. 514 (92 SC 2182, 33 LE2d 101) (1972); *Doggett v. United States*, 505 U. S. 647 (112 SC 2686, 120 LE2d 520) (1992).

In considering the four factors in the second tier of analysis, no one factor is necessary or sufficient to find a deprivation of the right to a speedy trial. *State v. Redding*, 274 Ga. 831, 832 (561 SE2d 79) (2002). Instead, the factors must be considered together, balancing the conduct of the prosecution and the defendant on a case-by-case basis. *Boseman v. State*, 263 Ga. 730, 731 (1) (438 SE2d 626) (1994). We review a trial court's decision to deny a motion seeking dismissal for a speedy trial violation under an abuse of discretion standard. *Burns v. State*, 265 Ga. 763, 764 (462 SE2d 622) (1995).

1. *Presumptive prejudice.* "For serious crimes . . . that do not involve unusual complexities[,] . . . one year generally marks the point at which expected deliberateness in the prosecution of a criminal matter turns into presumptively prejudicial delay." *Ruffin v. State*, 284 Ga. 52, 55 (2) (a) (663 SE2d 189) (2008). The constitutional right to a speedy trial attaches on the date of arrest or when more formal charges are initiated, whichever comes first. *State v. White*, 282 Ga. 859, 861 (2) (a) (655 SE2d 575) (2008). Ward was served with the arrest warrant in this case in February 2008 while he was incarcerated in another county on other charges, and was transferred to the Oglethorpe County jail in May 2008 for the charges at issue here. The State concedes that the delay between Ward's incarceration on these charges and his motion to dismiss in November 2010 is presumptively prejudicial. Accordingly, the other *Barker* factors must be considered to determine whether the State violated Ward's right to a speedy trial.

2. *Whether the delay was uncommonly long.* A delay is considered uncommonly long to "the extent to which the delay stretches beyond the bare minimum needed to trigger judicial examination of the claim." *Doggett*, 505 U. S. at 652 (II). Prejudice is presumed with a 12-month delay, and our Supreme Court has held that a delay of almost 27 months in a noncapital murder case is unusually long. *Ruffin*, 284 Ga. at 58 (2) (b) (i). We conclude, therefore, that the 34-month delay in this aggravated assault, robbery, and kidnapping case is uncommonly long, and thus weighed against the State. *Higgins v. State*, 308 Ga. App. 257, 260 (2) (a) (707 SE2d 523) (2011) (24-month delay in aggravated assault case uncommonly long and weighed against State).

3. *The reason for the delay.* The trial court found that the delay in this case was not attributable to Ward and "was not the fault of the prosecutor even though 29 months has passed since the Defen-

dant's indictment, 34 months have passed since the Defendant was [formally] arrested on the arrest warrant in this case[,] and 35 months have elapsed since the alleged crime occurred in this case." The relevant question, however, is not whether the *prosecutor* was at fault for the delay, but whether the *government* was.

> The responsibility for bringing a defendant promptly to trial rests with the government, . . . [which] includes all state actors, even trial and appellate court judges. The relevant inquiry for purposes of [this] factor is not whether the prosecutor or the accused bears more responsibility for the delay, but whether the government or the criminal defendant is more to blame for that delay.

(Citations and punctuation omitted.) *Over v. State*, 302 Ga. App. 215, 217 (2) (690 SE2d 507) (2010) (delay due to crowded docket is attributable to the government).

While we find no abuse of discretion in the trial court's finding that the delay in this case was not attributable to the prosecutor, at least a portion of the delay was attributable to the government. The State notes that the Northern Judicial Circuit, which includes Oglethorpe County, has only two terms a year, and thus assembles grand and petit jurors only twice a year, making it "extremely difficult to indict an individual, complete discovery[,] and reach trial within twelve months."

Further, Ward's appointed counsel was allowed to withdraw in August 2008 because he was not being paid, leaving Ward unrepresented until Ward's relatives hired the current counsel in January 2009.[2] This five-month delay was attributable to the State. *Weis v. State*, 287 Ga. 46, 50 (1) (b) (694 SE2d 350) (2010) ("[T]o the extent that the delay caused by the lack of funding is attributable to the State, it can only be weighed against the State[.]"). "[T]he federal Constitution requires the states to provide conflict-free appointed counsel to indigent criminal defendants," and thus the failure to provide indigent defense counsel weighs against the State. *Ruffin*, 284 Ga. at 61; see also *Vermont v. Brillon*, 556 U. S. 81 (III) (C) (129 SC 1283, 173 LE2d 231) (2009).

4. *The defendant's assertion of the right to a speedy trial.* Ward testified that he asked his first lawyer, who was appointed, to assert a speedy trial demand in June 2008, but the lawyer declined to do so

---

[2] The trial court issued an order in July 2009 finding that the public defender's office had a potential conflict in representing Ward and appointed an attorney to represent Ward, but the attorney never appeared, never made contact with Ward, and withdrew shortly after the appointment due to a conflict.

because he said he was going to withdraw from the case. That lawyer was, in fact, permitted to withdraw on August 4, 2008, and Ward was unrepresented for the next five months. His current counsel was hired in January 2009, and for the next 22 months counsel never asserted Ward's right to a speedy trial. Instead, on November 8, 2010, when the case was to be called for trial, retained counsel filed a motion to dismiss the charges on speedy trial grounds.

Because Ward did not assert his right to a speedy trial in the 22 months after his current counsel was hired, "this factor, which must be given 'strong evidentiary weight,' *Barker*, [407 U. S.] at 531, weighs against" him. *Marshall v. State*, 286 Ga. 446, 447 (1) (c) (689 SE2d 283) (2010). "That is because it is the responsibility of the defendant to assert the right to a speedy trial since 'delay often does work to a defendant's advantage.' " (Citation omitted.) Id.

5. *The prejudice to the defendant.* The trial court found that the delay in trying this case did not substantially prejudice Ward. In considering this factor, "we consider three interests: preventing oppressive pretrial incarceration, minimizing anxiety and concern of the defendant, and limiting the possibility that the defense will be impaired." *Layman v. State*, 284 Ga. 83, 86 (663 SE2d 169) (2008).

Our Supreme Court has held that a 27-month delay, standing alone, was oppressive. *Boseman*, 263 Ga. at 734 (1) (d). We likewise conclude that the lengthy delay in this case was oppressive. As to the interest in minimizing the defendant's anxiety and concern, those issues are "always present to some extent, and thus absent some unusual showing [are] not likely to be determinative in defendant's favor." (Citations and punctuation omitted.) Id. at 733 (1) (d). When asked how the lack of a speedy trial had affected him, Ward testified that at times he was "angry a little bit," did not sleep some nights, and experienced strain from being locked up and "not really knowing what is what." In this case, Ward has made no unusual showing of anxiety and concern.

Impairment of the defense is the most important of the interests considered under the prejudice factor "because the inability of a defendant adequately to prepare his case skews the fairness of the entire system." *Barker*, 407 U. S. at 532. Ward argues that the delay prejudiced his defense because two of his witnesses became unavailable. During the motion hearing, Ward testified that one of his witnesses would have testified at trial that a victim told the witness that Ward was not involved in "the stunt" Ward's co-defendants "tried to pull," but the witness was unavailable because he died in January or February 2009. Ward also testified that he was unable to contact a second witness because her telephone number had changed and Ward's cousin, who "usually was the one that talked to her," had gone to prison and lost contact with her. Ward's counsel also argued

that Ward was prejudiced because the State "once again failed to let us know they weren't going to really produce" a co-defendant who was on the State's witness list and was "critical witness for the defense."

We find no abuse of discretion in the trial court's finding that the delay did not substantially prejudice Ward. According to Ward, the witness who died would only testify regarding something one of the victims told him. As to the second missing witness, Ward testified that he had no current telephone number but did not describe any attempts by him or his counsel to locate her. Finally, as to the co-defendant the State did not produce for the anticipated trial, as the trial court noted, Ward had the power to subpoena the co-defendant himself, and had remained incarcerated locally with the opportunity to communicate with his counsel. Thus the State's failure to produce the co-defendant did not prejudice Ward because he could have subpoenaed the co-defendant himself instead of relying on the State to produce him simply because he was included in the State's witness list.

When the applicable factors are considered and balanced on the present record, we conclude that the trial court did not abuse its discretion by denying Ward's motion to dismiss the charges for lack of a speedy trial. While the lengthy delay was attributable to the State, Ward did not assert his right to a speedy trial and was not significantly prejudiced by the delay.

*Judgment affirmed. Adams and Blackwell, JJ., concur.*

DECIDED AUGUST 16, 2011.

*James W. Smith*, for appellant.
*Robert W. Lavender, District Attorney*, for appellee.