### A11A1279. HARRISON v. THE STATE.
(717 SE2d 303)

MIKELL, Judge.

Paul Wayne Harrison appeals the denial of his plea in bar, alleging that a delay between his arrest and indictment violated his speedy trial rights under the Georgia Constitution and the Sixth Amendment of the United States Constitution. He seeks acquittal and dismissal of an eight-count indictment charging him with, inter alia, rape and aggravated child molestation, arguing that the trial court erred in its application of the factors outlined by the United States Supreme Court in *Barker v. Wingo*[1] when it found that he had not been subjected to oppressive pretrial incarceration and had failed to show prejudice to his legal defense. Because the trial court did not abuse its discretion in denying the plea in bar, we affirm.

"[W]e review the trial court's denial of a motion to dismiss an indictment on speedy trial grounds for abuse of discretion and defer to the trial court's findings of fact and its weighing of disputed facts."[2]

So viewed, the evidence shows that Harrison was arrested in Florida, then extradited to and arrested in Mississippi on November 29, 2006, after his ex-girlfriend alleged, in a meeting with an investigator for the Forsyth County Sheriff's Office, that he had sexually abused her young daughter both at her home in Hinds County, Mississippi, and at his home in Forsyth County, Georgia. On December 6, 2006, while Harrison still was incarcerated in Mississippi, the Forsyth County Sheriff's Office completed its investigation of him and the following day posted warrants for his arrest on charges related to the same victim, but separate from the Mississippi charges and asked Hinds County officials to place a "hold" on him.

Harrison remained incarcerated in Mississippi for approximately two years. Near the end of that time, on August 11, 2008, a Hinds County assistant district attorney wrote a letter to the Forsyth County District Attorney's Office indicating that Harrison and his lawyer seemed likely to accept a plea offer in which Harrison would agree to a twenty-year confinement with release on time served and

---

[1] 407 U. S. 514, 530 (IV) (92 SC 2182, 33 LE2d 101) (1972).

[2] (Citations and footnote omitted.) *Grizzard v. State*, 301 Ga. App. 613, 614 (688 SE2d 402) (2009).

to five years of supervised probation, have no contact with the victim and register as a sex offender, as long as the Forsyth County District Attorney's Office "agrees to dismiss, with prejudice, your pending charges . . . involving the same victim."

"[L]et me know whether you believe you can obtain a conviction against Paul [Harrison] in your jurisdiction. I truly believe Paul abused this child and at the very least needs to be registered as a sex offender," the letter continues. But because the case involved allegations that the victim's mother had an extramarital affair with Harrison and was abused by him, and because the alleged sexual abuse of the child was not disclosed until about a year after it occurred, the Hinds County assistant district attorney wrote:

> I do not have a reasonable expectation of obtaining a conviction at trial. . . . I don't believe I can afford to try this case. Should you believe your jurisdiction is better suited for convicting Paul, I am prepared to dismiss my case and allow him to be extradited to Forsyth County to stand trial.

On September 25, 2008, a Mississippi circuit court granted the Hinds County District Attorney's Office's motion for nolle prosequi, and on November 4, 2008, the Georgia arrest warrants posted in 2006 were executed against Harrison and he was extradited to Georgia.

The Forsyth County Superior Court granted Harrison's motion for bond on January 9, 2009. Unable to post bond, he twice motioned to reduce bond; those motions were denied.

On July 9, 2010, Harrison filed his plea in bar alleging an unconstitutional delay in indictment. A grand jury indicted him three days later, on July 12, 2010. The Forsyth County Superior Court heard the plea in bar on August 13, 2010; Harrison amended his plea in bar the same day. The trial court then held another hearing on September 17, 2010, to address the delay in the indictment and possible prejudice to the defendant.

On September 24, 2010, the trial court issued a written order finding presumptive delay in Georgia's indictment of Harrison, but also finding that Harrison had not shown prejudice resulting from the delay. The trial court found no violation of Harrison's constitutional right to a speedy trial. Harrison appeals.

1. *Constitutional Framework.* Two types of pretrial delay have been recognized as potential violations of an accused's speedy trial rights. The first precedes arrest or indictment and may be triggered during the investigative stage of a case if a defendant is held in

custody by the state during that period.[3] This pre-arrest, pre-indictment delay possibly implicates due process guarantees under the Fifth and Fourteenth Amendments.[4] The second type of delay may occur after arrest or indictment, potentially triggering Sixth Amendment protections.[5]

Although Harrison raises, briefly, the possibility of due process violations triggered by pre-arrest, pre-indictment delay, we do not find merit in that contention. Harrison was arrested in Florida and subsequently extradited, arrested and incarcerated in Mississippi in 2006. During a portion of that time, Georgia authorities were investigating him. But because he had not been arrested by Georgia authorities during this period, we need not reach the issue of whether his due process rights were violated.

2. *Threshold Inquiry.* Therefore, this court's analysis begins with the second type of potential delay, a review of which is triggered by the November 4, 2008, execution of the Georgia arrest warrants.

When considering a motion to dismiss on speedy trial grounds, the court conducts the two-tiered threshold inquiry set forth in the United States Supreme Court decisions *Barker v. Wingo*[6] and *Doggett v. United States*.[7] The first tier of the analysis considers whether the delay is long enough to be presumptively prejudicial.[8] Only if the delay is found to be presumptively prejudicial must the court engage in the second tier of the analysis by applying the four-factor *Barker-Doggett* balancing test to assess whether the accused was deprived of a speedy trial: (1) whether the delay is uncommonly long; (2) the reason for the delay, and whether the defendant or the government is more responsible; (3) the defendant's assertion of his speedy trial rights in due course; and (4) whether the defendant was prejudiced by the delay.[9] None of the four factors, standing alone, is necessary or sufficient to find a deprivation of the right to a speedy trial.[10]

Harrison's stated enumerations of error focus on the prejudice factor of the *Barker-Doggett* test, and on one of the interests stemming from that factor, oppressive pretrial incarceration. However, because a *Barker-Doggett* analysis requires a balancing of all

---

[3] *Sanders v. State*, 132 Ga. App. 580, 582 (2) (a) (208 SE2d 597) (1974).

[4] See *Jones v. State*, 284 Ga. 320 (1) (667 SE2d 49) (2008).

[5] Id. at 322 (2). Accord *State v. Thaxton*, 311 Ga. App. 260 (715 SE2d 480) (2011).

[6] Supra.

[7] 505 U. S. 647 (112 SC 2686, 120 LE2d 520) (1992).

[8] *Brewington v. State*, 288 Ga. 520-521 (1) (705 SE2d 660) (2011). Accord *Ward v. State*, 311 Ga. App. 425 (715 SE2d 818) (2011).

[9] *Doggett*, supra at 651 (II), citing *Barker*, supra.

[10] *State v. Redding*, 274 Ga. 831, 832 (561 SE2d 79) (2002).

factors, our analysis, like the trial court's, will discuss them all.

The trial court in the instant case found that the length of the delay in Georgia was "approximately 22 months,"[11] and was presumptively prejudicial. "The pretrial delay is measured from the accused's arrest, indictment, or other formal accusation, whichever comes first . . . to the trial or, if the accused files a motion to dismiss the indictment, until the trial court denies the motion."[12] "For serious crimes lacking unusual complexities, one year generally marks the point at which expected deliberateness in the prosecution of a criminal matter turns into presumptively prejudicial delay."[13]

We agree that the delay was presumptively prejudicial, and move to a *Barker-Doggett* analysis to determine if Harrison's constitutional speedy trial rights were violated.

3. *The Barker-Doggett Factors.*

(a) *Length of Delay.* The first factor in a *Barker-Doggett* analysis presents the question of whether the delay was uncommonly long.[14] The trial court in the instant case made no such finding.[15] Harrison raises this point in the body of his appeal, but does not specifically cite it as an enumeration of error. Our state Supreme Court, in a similar instance, found that "inasmuch as the trial court has effectively weighed this factor in appellant's favor, it did not abuse its discretion."[16] We also find no abuse of discretion.

(b) *Reasons for the Delay.* Analysis of this factor requires a determination of whether the government or the defendant is more responsible for the delay.[17]

At a hearing, the Forsyth County district attorney told the trial

---

[11] Although the trial court did not reveal the relevant dates from which it made this calculation, a span of 22 months and 20 days elapsed between Harrison's arrest and the trial court's denial of his plea in bar on September 24, 2010.

[12] (Citation, punctuation and footnote omitted.) *Grizzard*, supra.

[13] (Punctuation and footnote omitted.) *State v. Shirley*, 311 Ga. App. 141, 143 (2) (714 SE2d 636) (2011).

[14] *Doggett*, supra at 651 (II). Accord *Ruffin v. State*, 284 Ga. 52, 56 (2) (b) (i) (663 SE2d 189) (2008).

[15] Harrison contends that the delay includes the time he spent incarcerated in Mississippi, for a total of 45 months, beginning at the *issuance* of the Georgia warrants and "hold" placed on him in 2006. We disagree, as did the trial court, and find no abuse of discretion. Harrison did not become subject to the full force of Georgia law until the warrants were *executed* in 2008.

[16] *Brewington*, supra at 522-523 (3) (b) (i) (trial court did not consider length of delay beyond threshold question of presumptive prejudice and did not discuss whether delay was uncommonly long). But see *Butler v. State*, 309 Ga. App. 86, 89-90 (1), (2) (a), (b) (709 SE2d 293) (2011) (error found when state conceded 32-month delay was presumptively prejudicial, but trial court did not address whether delay was uncommonly long). Despite the scholarly opinion by Judge Doyle in *Butler*, that court clearly was unaware that only weeks before, the Supreme Court of Georgia had issued its ruling in *Brewington*. As the cases are factually dissimilar, we need not overrule *Butler*.

[17] *Brewington*, supra at 521 (1).

court that the delay occurred in part because she thought the case could be resolved with a plea, and because high turnover in the district attorney's office meant she had to carry a large caseload. The district attorney told the court that "[t]he delay was in no way specific to this Defendant or any attempt to try and . . . force him into a pleading, or punishing him because of the fact that we could not resolve this case with a plea." Harrison did not contest this rationale, nor did he allege any strategic or deliberate delay on the part of the state. Analysis of this factor turns on an assessment of a range of reasons for delay on the part of the state, including:

> delay resulting from, or in spite of, the State's diligent prosecution of the case, which will rarely support a speedy trial claim, to deliberate delay to gain an improper advantage over the accused. . . . The latter will virtually always result in a dismissal of the case against the defendant, because it strikes at the very heart of the speedy trial guarantee. The delay in many cases lies with some type of official neglect, which falls within the middle of the spectrum.[18]

> Our cases reflect that negligence is entitled to minimal weight against the State only where it results either from the prosecution's inadvertent neglect of the case or from solely administrative factors over which the prosecution has no control, such as overcrowded court dockets or understaffed law enforcement agencies.[19]

In this case, the turnover in the district attorney's office would constitute a solely administrative factor. The trial court recognized that the defendant's involvement in plea negotiations also contributed to the delay, but weighed this factor more heavily against the state than the defendant. Accordingly, we find no abuse of discretion.

(c) *Assertion of the Right to Speedy Trial*. Harrison did not assert his right to speedy trial until the filing of his motion to dismiss and acquit, nearly two years after his Georgia arrest. Because Harrison waited so long to assert his right to speedy trial, "this factor, which must be given strong evidentiary weight . . . weighs against him. . . . That is because it is the responsibility of the defendant to assert the right to a speedy trial since delay often does work to a defendant's

---

[18] (Punctuation and footnotes omitted.) *Shirley*, supra at 143 (3) (b).

[19] (Citations and punctuation omitted.) *Ditman v. State*, 301 Ga. App. 187, 193 (2) (b) (687 SE2d 155) (2009).

792

advantage."[20] The trial court found that his failure to assert a demand weighed against him.[21] We find no abuse of discretion, but note that our Supreme Court has held that "an extended delay in asserting the right to a speedy trial should normally be weighed *heavily* against the defendant."[22]

(d) *Prejudice to the Defendant.* The trial court found that the prejudice factor "weighs heavily against the Defendant."

> [W]hether a defendant needs to show particularized prejudice depends upon an evaluation of the first three factors in the balancing test, and whether those factors weigh against the government. The central holding of *Doggett* was that when there is significant delay (the first factor), caused by the government (the second factor), then the resulting presumption of prejudice, albeit unspecified, if neither extenuated, as by the defendant's acquiescence (the third factor), nor persuasively rebutted by the State, entitles the defendant to relief.[23]

Here, the trial court weighed only the first two factors against the state, finding as to the third factor that Harrison failed to assert his speedy trial right. Thus, the trial court had no obligation to find actual prejudice.

The court also "must examine the delay relative to all other factors, including the complexity of the case and the evidence existing on the date the State initiated the prosecution."[24]

Harrison contends that the case was of minimal complexity and that the state had concluded its evidence gathering in 2006. However, the state contends that the case involved numerous counts of serious felonies, all involving out-of-state witnesses and that Georgia's prosecution did not begin until the Mississippi case resolved and the prosecutors from both offices first communicated in 2008. Nothing else in the record addresses the complexity of the case.

---

[20] (Citations and punctuation omitted.) *Ward*, supra at 430 (4).

[21] Harrison counters that he unsuccessfully motioned to reduce bond more than once, asserting, "This is not a case of the Defendant sitting in jail and not seeking his release pre-indictment." To the extent Harrison means to argue that bond reduction motions may constitute speedy trial requests, we find this utterly without merit. A motion for bond reduction is designed to secure a defendant's perhaps temporary release, not accelerate his trial date. See *State v. Johnson*, 274 Ga. 511, 513 (3) (555 SE2d 710) (2001) (even request for jury trial found insufficient to invoke speedy trial rights).

[22] (Citations omitted; emphasis in original.) *State v. Porter*, 288 Ga. 524, 529 (2) (c) (3) (705 SE2d 636) (2011).

[23] (Citations, punctuation and footnotes omitted.) *Hayes v. State*, 298 Ga. App. 338, 347 (2) (d) (680 SE2d 182) (2009).

[24] (Citations omitted.) Id. at 348 (2) (d).

Because on appellate review all inferences are to be drawn in support of the decisions of the finder of fact, we defer to the trial court's decision to weight the prejudice factor heavily against the accused.

To reach that decision, the trial court correctly considered three interests comprising the types of prejudice that may be associated with an unreasonable delay before trial: "preventing oppressive pretrial incarceration, minimizing anxiety and concern of the defendant, and limiting the possibility that the defense will be impaired."[25]

The trial court addressed each factor separately.

(i) *Oppressive Pretrial Incarceration.* The trial court found, without explanation, that the interest in preventing oppressive pretrial incarceration weighed in favor of the defendant.

While Harrison was incarcerated for 22 months in Georgia, a fact raising a presumption of prejudice, our Supreme Court has held that pretrial incarceration of 27 months "does not automatically establish prejudice in the defendant's favor for purposes of the *Barker* analysis absent proof of sub-standard conditions or other oppressive factors beyond those that necessarily attend imprisonment."[26] Harrison also testified that he was receiving medication, as needed, for an injury sustained at the Mississippi prison, and that he had not been in any altercations while incarcerated in Georgia.

(ii) *Minimizing Anxiety and Concern of the Accused.* The trial court, noting that although the defendant "testified that he is frustrated and has had some unpleasant experiences while incarcerated in Georgia, . . . also testified that he was 'pretty at ease' with incarceration." Thus, the trial court found this factor to be "relatively neutral." Harrison's testimony before the trial court shows, in our view, little anxiety beyond that which would normally attend incarceration.[27] While he testified that he felt "sedated—suspended animation, you're like in a coffin with a telephone," he also testified "I'm pretty good at dealing with my stressing," and that he was "hanging in there."

(iii) *Limiting Impairment to the Defense.* The trial court found that overall, the prejudice factor "weighs heavily against Defendant" because he failed to show prejudice to his legal defense and did not point to destruction or loss of evidence or unavailability of witnesses.

Impairment of the defense is the most important interest considered under the prejudice factor "because the inability of a

---

[25] (Citation omitted.) *Layman v. State*, 284 Ga. 83, 86 (663 SE2d 169) (2008).

[26] (Punctuation and footnote omitted.) *Jackson v. State*, 272 Ga. 782, 785 (534 SE2d 796) (2000). Accord *Ditman*, supra at 195 (2) (d) (finding absent proof of substandard conditions, 20-month incarceration was substantial but not oppressive).

[27] See *Ward*, supra at 430 (5).

defendant adequately to prepare his case skews the fairness of the entire system."[28]

> The weight given to the prejudice factor may be bolstered if the defendant can demonstrate some actual impairment to his defense in addition to prejudice that is presumed from the passage of time. Likewise, the weight given to presumed prejudice may be reduced or even eliminated if the State can show that the defense has not, in fact, been substantially impaired.[29]

A review of the record shows no demonstration of actual impairment. Harrison alleges that he has had a difficult time staying in touch with people who could serve as character witnesses for him, and that with the passage of time, "memories fade." However, he did not identify any specific character witnesses, nor indicate whether or not they were available or in what way their testimony might be material to his defense. To prevail on this assertion, he "must show that the unavailable witnesses could supply material evidence for the defense."[30]

As for the fading of memories, Harrison "must present more than vague or conclusory statements; he must offer specific evidence. Merely asserting that memories have faded over time does not satisfy this requirement."[31]

Upon consideration of the three interests crucial to evaluating prejudice, we find that Harrison has failed to show he was prejudiced by the delay. This factor weighs heavily against him, and we find no abuse of discretion.

(e) *Balancing the Four Factors*. The trial court weighed the four factors, finding no speedy trial violation because Harrison had suffered no prejudice to his legal defense.

While we do not condone the state's delay in this action, Harrison's own tardiness in raising his right to a speedy trial "weighs heavily against him[,] as does his failure to show prejudice in light of such delay. . . . This is particularly true where, as here, there is no evidence that the delay was the result of a deliberate attempt by the State to hamper the defense."[32]

---

[28] *Barker*, supra at 532 (IV).

[29] *Porter*, supra at 532 (2) (d).

[30] (Footnote omitted.) *Ingram v. State*, 280 Ga. App. 467, 471 (1) (d) (634 SE2d 430) (2006).

[31] (Citation and punctuation omitted.) *Lambert v. State*, 302 Ga. App. 573, 577-578 (4) (692 SE2d 15) (2010).

[32] (Citations, punctuation and footnotes omitted.) *Ferguson v. State*, 303 Ga. App. 341,

A review of the trial court's application of the *Barker-Doggett* factors leads us to conclude that the trial court did not abuse its discretion in denying Harrison's plea in bar and motion to dismiss, and in finding that his constitutional right to a speedy trial was not violated.

*Judgment affirmed. Smith, P. J., and Dillard, J., concur.*

DECIDED SEPTEMBER 27, 2011.

*Jeffrey L. Cox*, for appellant.
*Penny A. Penn, District Attorney*, for appellee.

