**FOURTH DIVISION**
**BARNES, P. J.,**
**RAY and MCMILLIAN, JJ.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules

**September 8, 2015**

# In the Court of Appeals of Georgia

A15A0783. LEOPOLD v. THE STATE.

MCMILLIAN, Judge.

This is the third appearance of this case before this Court. In *Leopold v. State*, 324 Ga. App. 550, 557 (1) (751 SE2d 184) (2013) ("*Leopold I*"), we rejected Neil Leopold's claims of ineffective assistance of trial counsel following his 2009 convictions for possession of marijuana and possession of marijuana with intent to distribute. However, we remanded the case to the trial court for entry of a more detailed order with respect to his claim that he was denied his constitutional right to a speedy trial. Id. at 557 (2).

On remand, the trial court again found that Leopold "failed to meet his burden in showing his constitutional right to a speedy trial has been violated." And in unpublished opinion issued October 8, 2014, this Court again remanded this case with

direction to enter the specific findings of fact and conclusions of law required by *Barker v. Wingo*, 407 U.S. 514 (92 SCt 2182, 33 LE2d 101) (1972). *Leopold v. State*, 329 Ga. App. XXV (October 8, 2014) (unpublished) ("*Leopold II*"). Thereafter, the trial court entered an order in which it again found that Leopold was not denied his constitutional right to a speedy trial. This appeal followed. In his sole enumeration of error, Leopold asserts that the three-year delay between his arrest and trial violated his Sixth Amendment right to a speedy trial, compelling reversal of his conviction.

The record shows that Leopold was arrested on September 13, 2006 and indicted on January 5, 2007 for one count of possession of marijuana with intent to distribute and one count of possession of marijuana.[1] The charges stemmed from Leopold's involvement in receiving a package containing more than four pounds of marijuana. In September 2006, the East Metro Drug Enforcement Task Force learned that a package traveling to Georgia from Arizona might contain marijuana. After confirming the presence of marijuana, the police organized a controlled delivery of the package, which was addressed to "Gary Williams" at a Covington, Georgia address — the home of Leopold's cousin.

---

[1] We will briefly summarize the facts of this case in order to provide context for our analysis. The facts are more fully set forth at *Leopold I*, 324 Ga. App. 550.

A police recording of the delivery shows Leopold sitting in a white sedan parked in the driveway of the delivery address before getting out and pacing around the driveway and looking toward the street. He then walked to the end of the driveway to meet a UPS investigator, who was dressed as a delivery driver. The investigator told Leopold he had a package for Gary Williams and asked if he lived there. Leopold stated that it "was the correct place and … that [Gary Williams] was just down the street and was going to be right back."

The investigator decided to leave the package beside the front door. Leopold stayed near the package without touching it until the investigator drove away. Leopold then picked up the package and placed it behind another car parked beside the white sedan. Meanwhile, a black sedan pulled up and parked on the street nearby. Leopold walked over to the black sedan and spoke to the front passenger. Two men, Junior Blackford and Raymond Cornelius, got out of the black sedan. Leopold retrieved the package and placed it in the back seat of the white sedan.

After talking with Blackford, Leopold opened the trunk of the white sedan and placed the package in it. Cornelius then walked over, and the three men had a discussion while arranging the contents of the trunk. After the trunk was closed and Leopold got into the driver's seat with keys in his hand, police officers moved in and

arrested him. Blackford, who had been outside the car looking around, fled but was captured.[2] Leopold gave a statement to police in which he claimed that he did not know what was in the package and that Blackford had paid him to let him have a package delivered to his address. Leopold claimed that he "felt funny" about it and "questioned Blackford about it" but that Blackford told him not to worry.

After both Leopold and Blackford were indicted in January 2007, Blackford posted bond and fled the state.[3] When Blackford did not appear for a scheduled hearing on March 28, 2007, a bench warrant was issued for his arrest. Leopold posted bond on June 1, 2007, and on June 7, 2007, announced he was ready for trial. Thereafter, the State filed a motion to join the trial of Leopold and Blackford without opposition. The trial court granted the motion and stated that the case would not proceed to trial until Blackford was located.

In April 2009, Blackford was located in New York after he was arrested on unrelated charges. Once he was returned to Georgia, Blackford gave a formal statement, disavowing any involvement in the delivery of the package and expressing

---

[2] Although he was initially arrested, Cornelius was not charged with an offense for his conduct.

[3] It is undisputed that Leopold remained in Georgia and attended several pretrial hearings.

4

concern that he could be deported due to an immigration hold in New York. Based on his representation, the State moved to grant him immunity in exchange for his testimony against Leopold, and the trial court granted the motion.

Leopold's trial began September 28, 2009, just over three years after his arrest. Although the State maintained that Blackford was still a charged co-defendant and would face trial, Blackford was one of the State's primary witnesses. He testified that he was from Jamaica, and although he was not a United States citizen, he had been living in New York since 1979. He was visiting Georgia and staying in a hotel at the time of his arrest. He denied asking Leopold to use his address for delivery of a package and claimed that he could receive mail at his hotel. He further testified that he had no knowledge of the package until he saw Leopold with it at the house when he returned from the store to buy beer.[4] Cornelius, also called as a State witness, corroborated Leopold's version of the events leading up to his arrest. Leopold was found guilty on both charges and sentenced to ten years, eight to serve. Nineteen days after the conclusion of trial, the State moved to dead-docket Blackford's charges.

---

[4] Blackford testified that he ran from the police because he "was drinking and smoking and knew he had a little thing with the immigration [and] just got nervous and ran." (Punctuation omitted.) *Leopold I*, 324 Ga. App. at 553.

1. Both the Sixth Amendment of the United States Constitution and the Georgia Constitution provide that criminal defendants shall have the right to a speedy trial. See *Brewington v. State*, 288 Ga. 520, 520 (1) (705 SE2d 660) (2011). When analyzing a constitutional speedy trial claim, this Court must first determine "whether the interval from the accused's arrest, indictment, or other formal accusations to the trial is sufficiently long to be considered 'presumptively prejudicial.' [Cits.] If not, the speedy trial claim fails at the threshold." *Ruffin v. State*, 284 Ga. 52, 55 (2) (663 SE2d 189) (2008). If, however, the delay is presumptively prejudicial, the defendant's claim is then analyzed under the rubric of *Barker*, which established a four-part balancing test to consider:

> (1) the length of the delay; (2) reasons for the delay; (3) defendant's assertion of the right to speedy trial; and (4) the prejudice to the defendant. Standing alone, none of these factors are a necessary, or sufficient condition to a finding of deprivation of the right to a speedy trial, but rather should be considered as part of a balancing test.

(Citations and punctuation omitted.) *Bowling*, 285 Ga. at 44 (1).

"These four inquiries have no talismanic qualities and must be considered together with such other circumstances as may be relevant in light of the animating principles of the speedy trial guarantee." (Citation and punctuation omitted.)

6

*Sweatman v. State*, 287 Ga. 872, 873 (2) (700 SE2d 579) (2010). Thus, "[n]o one element is either necessary or sufficient to conclude that the right to a speedy trial has been violated." Id. Because this analysis "necessarily compels courts to approach speedy trial cases on an ad hoc basis," it is "a task better suited to trial courts than appellate courts," and thus, the trial court's resolution of a speedy trial motion is reviewed only for abuse of discretion. (Citation and punctuation omitted.) Id. at 873-874 (2). "As the appellate court, we must accept the factual findings of the trial court unless they are clearly erroneous, and we must accept the ultimate conclusion of the trial court unless it amounts to an abuse of discretion, even though we might have reached a different conclusion were the issue committed to our discretion." (Citation omitted.) *State v. Gay*, 321 Ga. App. 92, 93 (1) (741 SE2d 217) (2013).

Here, the State does not dispute that the three-year delay was presumptively prejudicial. See *State v. Porter*, 288 Ga. 524, 526 (2) (b) (705 SE2d 636) (2011) (generally, a delay of one year is presumptively prejudicial). We therefore move to the second stage of the analysis.

2. (a) *Length of Delay.* "The constitutional right to a speedy trial attaches on the date of the arrest or when formal charges are initiated, whichever first occurs." (Citation and punctuation omitted.) *Fallen v. State*, 289 Ga. 247, 248 (1) (710 SE2d

7

559) (2011). If the delay passes the threshold test of presumptive prejudice, the length of delay is considered a second time by factoring it into the *Barker* analysis. See id. "The extent to which delay can be seen as uncommonly long depends to some extent on the complexity and seriousness of the charges in that case." (Citation and punctuation omitted.) *Thomas v. State*, 331 Ga. App. 641, 661 (8) (b) (i) (771 SE2d 255) (2015).

Here, the trial court correctly found that the length of delay ought to be weighed against the State, rather than Leopold because of the uncommon length of time between arrest and jury trial. See *Ward v. State*, 311 Ga. App. 425, 428 (2) (715 SE2d 818) (2011) (34-month delay in an aggravated assault, robbery, and kidnapping case is uncommonly long and thus weighed against the State).

(b) *Reason for the Delay*. We next examine the reason for the delay and whether the delay is attributable to the defendant or the State. Here, the State asserts that the delay was due in part to Leopold and his failure to object to any of the trial continuances.[5] The State also maintains that the delay was the result of Blackford's

---

[5] The trial court noted that part of defense counsel's strategy – as testified to at the motion for new trial hearing – was to permit the trial's delay because the longer it took for Blackford to be found, the more likely it became that the State would dismiss the case.

8

absence and the importance of the testimony the State needed to elicit from him at trial. The trial court found that the delay was, at worst, negligence on behalf of the State rather than bad faith, and thus "relatively benign," but still weighed this factor negatively against the State. Leopold argues, on the other hand, that the trial court should have weighed this factor more heavily against the State because the State intentionally sought to delay the trial.

In assigning weight to this factor, our Supreme Court has noted that a delay caused by "the absence of any deliberate attempt on the part of the State to delay the trial in order to hamper the defense . . . is relatively benign but definitely negative." (Citation and punctuation omitted.) *Brannen v. State*, 274 Ga. 454, 456 (553 SE2d 813) (2001). See also *Barker*, 407 U.S. at 531 ("A deliberate attempt to delay the trial in order to hamper the defense should be weighted heavily against the government. . . . [A] valid reason, such as a missing witness, should serve to justify appropriate delay."); *Nelloms v. State*, 274 Ga. 179, 180 (549 SE2d 381) (2001) (noting delay caused by missing witness would justify State's failure to bring defendant to trial). Based on the record before us, we find no abuse of discretion in the trial court's assignment of weight to this factor.

(c) *Defendant's timely assertion of the right*. "Although the State bears the burden to ensure that an accused is brought to trial promptly, the accused bears some responsibility to invoke the speedy trial right." (Citation and punctuation omitted.) *State v. Alexander*, 295 Ga. 154, 158 (2) (c) (758 SE2d 289) (2014). However, a defendant does not forever waive his right to a speedy trial by failing to assert the right. *Ruffin*, 284 Ga. at 62-63. Rather, our Supreme Court has explained that "because delay often works for the defendant's advantage, the failure of the accused to assert his right in due course generally is accorded strong evidentiary weight." (Citations and punctuation omitted.) *Alexander*, 295 Ga. at 158 (2) (c).

Here, the trial court found this factor ought to be weighed heavily against Leopold because he failed to assert the right at any point from his arrest through the conclusion of his trial on October 2, 2009. Instead, Leopold waited to assert his right to a speedy trial until his amended motion for new trial, nearly two years after the trial ended.[6] Leopold argues that because there were mitigating circumstances, i.e., ineffective assistance of trial counsel, the trial court should have instead weighed this factor either neutrally or against the State. However, the actions or omissions he

_____

[6] The record shows that Leopold filed a statutory demand for speedy trial pursuant to OCGA § 17-7-170 on February 12, 2007. However, on July 3, 2007, he withdrew the demand after he was released on bond.

complains of were those of trial counsel appointed sometime in July 2009, only two months before trial. Given these circumstances, we do not find that the weight assigned by the trial court was an abuse of discretion. See *Alexander*, 295 Ga. at 159 ("the weight to be attributed to this factor may be mitigated in some cases, and whether the circumstances of a particular case warrant any mitigation is a question committed to the sound discretion of the trial court"). See also *Williams v. State*, 279 Ga. 106, 109 (1) (c) (610 SE2d 32) (2005) (even if defendant timely asserted demand for speedy trial, his later withdrawal of the demand and subsequent failure to press for trial should be weighed against him).

(d) *Prejudice.* The United States Supreme Court has explained that the prejudice factor "should be assessed in the light of the interests of defendants which the speedy trial right was designed to protect," which are "to prevent oppressive pretrial incarceration," "to minimize anxiety and concern of the accused," and "to limit the possibility that the defense will be impaired." *Barker*, 407 U.S. at 532. Of these three considerations, "the last has been deemed the most serious because the inability of a defendant adequately to prepare his case skews the fairness of the entire system." (Citation and punctuation omitted.) *Johnson v. State*, 313 Ga. App. 895, 904 (2) (d) (723 SE2d 100) (2012).

11

Here, the trial court noted that Leopold did not testify at the motion for new trial hearing and that his counsel presented no evidence nor argued any prejudice with regards to oppressive pretrial incarceration or anxiety and concern from the time he was arrested until he posted bond in February 2007. We agree that Leopold has not shown prejudice from his initial pretrial incarceration nor for the period of time he was released on bond. See *Davis v. State*, 301 Ga. App. 155, 159 (4) (a) (687 SE2d 180) (2009) (where defendant was released on bond, he cannot show prejudice from pretrial incarceration). And with respect to the interest in minimizing the defendant's anxiety and concern, "those issues are always present to some extent, and thus absent some unusual showing are not likely to be determinative in defendant's favor." (Citation and punctuation omitted.) *Ward*, 311 Ga. App. at 430 (5).

However, we disagree with the trial court's determination that there was no evidence of prejudice for the period of time that Leopold subsequently served in jail after his release. The record shows that Leopold was later arrested for an unrelated probation violation, and as a result, was held in the DeKalb County jail from December 18, 2008 until the start of his trial. Leopold argues that the delay in this case caused him to lose the possibility of serving this sentence concurrently with the nine months he served on his sentence for the probation violation. This Court has

12

previously recognized that with respect to a defendant incarcerated on other charges, a delay in bringing such a person to trial may be prejudicial because the defendant may forego the opportunity to receive a sentence that is at least partially concurrent with the one he is serving. *Johnson*, 313 Ga. App. at 904 (2) (d) (citing *Smith v. Hooey*, 393 U.S. 374, 378 (89 SCt 575, 21 LE2d 607) (1969)). Thus, the trial court erred in failing to consider this factor. However, our Supreme Court has consistently held that "when a defendant is already incarcerated for unrelated offenses, there is minimal possibility of oppressive pretrial incarceration." See *Williams*, 279 Ga. at 109 (1) (d) (citing cases).

And with respect to the impairment of his defense, Leopold argues that had Blackford not testified at trial, the testimony of two defense witnesses as to allegedly exculpatory statements made by Blackford would have been uncontroverted.[7] However, Leopold provides no citation to authority to support his argument that the State's inability to locate and present testimony from Blackford in order to make its case is the type of prejudice the *Barker* factors are designed to address, and we find none. The record confirms that Leopold was able to present evidence in support of

---

[7] The trial court disagreed, finding that under relevant law at the time of trial, the testimony of Leopold's friend and ex-girlfriend would have been inadmissible hearsay absent a showing of necessity. We express no opinion as to this ruling.

his defense, he does not argue that the delay prevented him from obtaining any evidence or testimony, and his only contention is that the delay strengthened the State's case, to his detriment. See *Robinson v. State*, 287 Ga. 265, 269 (1) (d) (695 SE2d 201) (2010) (prejudice factor does not weigh in the defendants' favor where "no witnesses have died or disappeared; there is no evidence that witnesses have lost their memories; and the defense strategy remained unchanged"). Cf. *Johnson*, 313 Ga. App. at 905 (2) (d) (iii) (if a witness that could supply material evidence for the defense dies or disappears during the delay, prejudice may be established). Moreover, the State's need to locate a missing witness whose testimony is required for trial is one of the specific reasons recognized by the United States Supreme Court that may justify a delayed trial. See *Barker*, 407 U.S. at 531 ("[A] valid reason, such as a missing witness, should serve to justify appropriate delay.").

(e) *Balancing the factors.* Although our deference to the trial court's denial of Leopold's motion is somewhat diminished by the trial court's misapplication of the law in failing to consider the prejudice caused by Leopold's loss of the opportunity to serve partial concurrent sentences, and assuming without deciding that such error is significant, we nonetheless conclude based on the record before us that "had the trial court used the correct facts and legal analysis, it would have had no discretion

14

to reach a different judgment." *State v. Pickett*, 288 Ga. 674, 679 (2) (d) (706 SE2d 561) (2011). See also *Brown v. State*, 287 Ga. 892, 896 (1) (700 SE2d 407) (2010) (no abuse of discretion in denying speedy trial motion after balancing State's delay in trying case against defendant's failure to timely assert right to speedy trial and failure to show impairment of defense as a result of delay). As explained in *Williams*, there is a minimal possibility of prejudice resulting from incarceration for unrelated offenses. *Williams*, 279 Ga. at 110 (1) (d). Thus, although the State may have been negligent in failing to bring Leopold to trial in a timely fashion and the trial court failed to consider the potential prejudice stemming from the loss of the opportunity to have partial concurrent sentences, those relatively benign considerations are outweighed by the fact that Leopold waited until two years after his trial to assert his right to a speedy trial and he has not shown that his defense was impaired by the delay. See *Christian v. State*, 281 Ga. 474, 478 (2) (640 SE2d 21) (2007); *Ward*, 311 Ga. App. at 431 (5). Accordingly, we find no abuse of discretion and affirm the trial court's denial of the speedy trial motion.

*Judgment affirmed. Barnes, P. J., and Ray, J., concur*.