**FIFTH DIVISION**
**MCFADDEN, C. J.,**
**RICKMAN, P. J., and SENIOR APPELLATE JUDGE PHIPPS**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
https://www.gaappeals.us/rules

*DEADLINES ARE NO LONGER TOLLED IN THIS COURT. ALL FILINGS MUST BE SUBMITTED WITHIN THE TIMES SET BY OUR COURT RULES.*

**June 8, 2021**

# In the Court of Appeals of Georgia

A21A0269. ERNEST v. MOFFA.

MCFADDEN, Chief Judge.

After Lisa Ernest failed to appear at the specially set bench trial in her divorce proceeding with Robert Moffa, the trial court, with input from counsel and a guardian ad litem, entered a final judgment and divorce decree and orders regarding child custody and child support. The trial court also issued an order requiring Ernest to reimburse Moffa for certain guardian ad litem fees and awarding attorney fees to Moffa under OCGA § 9-15-14 (b) for conduct that unnecessarily expanded the proceedings.

In this discretionary appeal Ernest challenges the decree, but not the orders on child custody and support. She argues that the trial court heard no evidence on non-custodial issues and the parties did not enter into an enforceable settlement agreement

on those issues. But the record shows that Ernest's counsel agreed to the trial court resolving the issues without hearing evidence and the decree did not purport to incorporate a separate, enforceable agreement between the parties. Ernest also challenges the ruling regarding guardian ad litem fees on the ground that the trial court lacked authority to enter it, but the trial court acted within his discretion. Finally, Ernest challenges the attorney fee award, but Moffa presented evidence supporting that award. So we affirm.

We also grant a motion filed by Moffa to strike from the appellate record evidence that was submitted to the trial court after the rulings on appeal.

1. *Procedural history.*

Moffa filed a complaint for divorce in July 2016. Ernest answered and counterclaimed for divorce. Both parties sought primary physical custody of their minor children. They consented to a temporary order giving primary physical custody of the children to Moffa and imposing limitations on Ernest's interaction with the children. Under the temporary order, Ernest forfeited her parenting time if she tested positive for alcohol.

Over the next two years, the parties engaged in disputes on various issues, including discovery, the custodial arrangement and parenting plan established by the

2

temporary order, and the school enrollment of some of the children. On December 19, 2017, the trial court appointed a guardian ad litem at Ernest's request. The trial court specially set the case for trial in July 2018, but after the parties requested a continuance he reset it for September 26 of that year. When he did so, the trial court told the parties that he would not entertain any further continuances.

The guardian ad litem submitted a report on September 21, 2018, five days before the trial was set to begin. (She had waited to submit the report until after Ernest gave deposition testimony, which occurred the day before.) Among other things, the guardian ad litem described Ernest's "serious alcohol problem" and associated criminal history. She recommended that Moffa have primary physical custody of the children. She also recommended that Ernest's visitation with the children be limited and supervised until Ernest successfully completed residential treatment for alcohol abuse, at which point her access to the children could be slowly expanded.

Ernest did not appear in court for the bench trial, which occurred on September 26 and 27, 2018. (The reasons for her absence and the specific actions taken by the trial court and counsel in response are detailed in Divisions 3 and 5, below.) The trial court denied her counsel's request to continue the trial, and he ultimately entered

3

several orders resolving the issues in the case: a divorce decree that included an equitable division of property, a permanent parenting plan, and a child support addendum. The trial court also entered an order apportioning the guardian ad litem's final bill between the parties. The divorce decree provided that the parties could submit briefs on the issue of attorney fees at a later time.

On March 28, 2019, Moffa filed a motion in which he asked the trial court to award him attorney fees and to reapportion the guardian ad litem fees. The trial court held an evidentiary hearing on that motion, and on December 13, 2019, the trial court awarded Moffa attorney fees under OCGA § 9-15-14 (b) and reapportioned the guardian ad litem fees to require Ernest to pay the entire final bill.

On January 10, 2020, Ernest filed with the trial court the affidavit of her counsel, which included a number of attachments. Three days later, on January 13, 2020, she filed application for discretionary appellate review of the divorce decree, the ruling reapportioning guardian ad litem fees, and the award of attorney fees. We granted that application on February 3, 2020. On February 13, 2020, Ernest filed her notice of appeal.

2. *Moffa's motion to strike.*

As an initial matter, we consider a motion that Moffa filed with this court asking us to strike from the record on appeal the affidavit of Ernest's counsel and its accompanying exhibits. As described above, Ernest submitted that evidence to the trial court after the trial court had entered the orders on appeal and shortly before Ernest sought discretionary appellate review of those rulings.

Our Supreme Court has held that such a motion to strike "invokes a ruling as to the scope of the record that [the appellate court] will be authorized to consider in addressing the merits of [the] appeal[.]" *State v. White*, 282 Ga. 859, 860 (1) (655 SE2d 575) (2008). It is inappropriate for an appellate court to consider evidence that had not been presented to the trial court before the trial court issued the rulings on appeal. See *Givens v. Ichauway Inc.*, 268 Ga. 710, 712 (1) (493 SE2d 148) (1997); *South v. Bank of America*, 250 Ga. App. 747, 751 (3) (551 SE2d 55) (2001). Although Ernest argues that her counsel's affidavit and its accompanying exhibits concern communications with the trial court or of which the trial court was made aware before the trial court entered the orders on appeal, Ernest did not present that evidence to the trial court for inclusion in the record until well after those orders were entered. So we "cannot consider that material, and [Moffa's] motion to strike is hereby granted." *White*, 282 Ga. at 861 (1).

5

3. *Non-custodial issues in decree.*

In her appellate brief, Ernest asserts that the trial court erred in entering the decree for several reasons that fall into two general categories. She argues that "there was no hearing or trial before the court as to the disputed non-custodial issues." And she makes a variety of arguments relating to the absence of an enforceable settlement agreement on those issues. None of her arguments require reversal.

(a) *Lack of hearing or trial on disputed non-custodial issues.*

After Ernest failed to appear for the first day of the specially set trial and the trial court declined to grant a continuance, the trial court proposed several options about how to resolve the non-custodial issues. The trial court stated that he was "going to go forward if that's what [Moffa's counsel] wants to do to get this thing to finality" and offered Ernest's counsel three choices:

> You can go out and talk to [Moffa's counsel] and see what you all can do. We can just dispense with that and start a trial with you in the uncomfortable position of representing a client who's not here. Or you can decide that you've done all you can do, leave the case, and [Moffa's counsel] can put up [Moffa's] case. I'm not going to suggest to you any of those but that's where we are. So what do you want to do?

Ernest's counsel chose the first option, to talk with Moffa's counsel and try to reach an agreement of some sort on the non-custodial issues, as counsel had done earlier that day with the custodial issues. The record also shows that Ernest's counsel saw and spoke with Ernest the evening of the first day of trial and that, on the second day of trial, he continued with this effort to reach an agreement with Moffa's counsel on the non-custodial issues.

Given what transpired at trial, Ernest's complaint that "there was no hearing or trial before the court as to the disputed non-custodial issues" is simply incorrect. A bench trial occurred, Ernest failed to appear, the trial court expressed his willingness to hear evidence anyway, and Ernest's counsel instead agreed to forego the presentation of evidence on the non-custodial issues in favor of working with Moffa's counsel off the record to resolve those issues. An appellant cannot complain of error that was induced by his or her conduct. *Dyals v. Dyals*, 281 Ga. 894, 896 (3) (644 SE2d 138) (2007). Thus, to the extent that it can be said that Ernest's counsel had a better alternative and so that "error could have resulted from the [decision that no evidence would be presented at the bench trial, Ernest's] counsel induced such error by approving [that approach to the resolution of the non-custodial issues], and [she] will not be heard to complain of [that decision] here." Id.

7

(b) *Arguments regarding a settlement agreement on non-custodial issues.*

As discussed above, at the bench trial counsel agreed to attempt to resolve the non-custodial issues between themselves in lieu of presenting evidence regarding them. On the second day of trial, Moffa's counsel represented to the trial court: "[W]e have worked out, I think 99.9 percent of our issues. . . . We are still fine tuning the details and we are going to stay. [Ernest's counsel] and I are going to stay and start typing up things frantically and try and get things on paper. So we are not really ready to read the settlement into the record, but we do, like I said, have an agreement." Ernest's counsel did not dispute this characterization of the status of their agreement. Shortly thereafter the trial court stated: "We have . . . been here to negotiate a settlement today on all property and equitable division." Ernest's counsel did not dispute this characterization of counsel's discussions. Ultimately the trial court entered a decree that resolved the non-custodial issues and referred to an agreement but did not expressly incorporate or attach any agreement.

Now, however, Ernest argues in her appellate brief, that we should reverse the decree

> because material terms of any alleged final agreement were disputed
> between the parties; there was no evidence in the record of the terms of

8

any final agreement; there was no motion to enforce settlement agreement filed by either party; and there was no hearing or trial before the court . . . as to whether there was a binding and enforceable final agreement [as to disputed non-custodial issues].

These arguments rest on a mistaken premise, that a separate, enforceable agreement between the parties was necessary for the trial court to enter the decree. It was not. While a trial court may incorporate an agreement between the parties into a divorce decree, it may also issue a decree without doing so, for example, in a contested divorce. See generally *Dolvin v. Dolvin*, 248 Ga. 439 (284 SE2d 254) (1981) (noting that where parties have contested divorce and alimony trial, decree will not incorporate a settlement agreement). The decree in this case made several references to a settlement agreement, but we do not construe those references to be an incorporation of the terms of a separate, enforceable agreement between the parties. With one exception, discussed below, the decree did not state that it was expressly incorporating any agreement between the parties, in whole or in part. It did not state or imply that it was a consent judgment. It did not include any agreement as an attachment.

The one exception concerns a paragraph in the decree requiring binding arbitration to resolve issues concerning certain property if the parties were unable to

resolve those issues themselves. At the end of that paragraph, the trial court states: "This provision regarding arbitration was an agreement announced by the parties which the [c]ourt has adopted and incorporated into this Final Judgment and Decree." The absence of similar language expressly incorporating an agreement as to other terms of the decree indicates that the trial court was *not* incorporating an agreement of the parties as to those terms.

Moreover, the transcript of the bench trial in this case shows that the trial court determined that Ernest's counsel was not in a position to enter into a binding agreement on her behalf at that time, so any agreement reached by counsel would serve simply to inform the trial court's own resolution of the issues. Counsel's lack of authority was made explicit in connection with the child custody issues, when the trial court, counsel, and the guardian ad litem discussed whether an agreement between counsel would be the basis of a "consent order." The trial court explained: "I'm making it the order of the court. I'm not going to require that [Ernest's counsel] consent to something that he is not really feeling like he is in a position to consent to."

The trial court and counsel did not specifically address the limitations on the ability of Ernest's counsel to bind Ernest to an agreement on the non-custodial issues.

But nothing in the record suggests that Ernest's counsel had *more* authority to consent to an agreement on the non-custodial issues than he had on the custodial issues. We may infer that the trial court took the same approach to the resolution of the non-custodial issues, that his decree would reflect the order of the court, rather than the agreement of the parties.

Simply put, the record shows that this was a contested divorce that went to a bench trial and that the trial court based the ultimate decree on counsels' resolution of the non-custodial issues, while recognizing that such resolution was not itself an enforceable agreement between the parties. To the extent Ernest argues counsels' resolution of the issues was not a proper basis for the decree, that argument fails for the reasons discussed above in Division 2: at the hearing her counsel agreed to this method of resolving the issues, in lieu of presenting evidence at the bench trial.

To the extent Ernest argues that the decree does not reflect the resolution reached by counsel, she has not shown error by the record. See *Dept. of Human Resources v. Allison*, 276 Ga. 175, 178 (575 SE2d 876) (2003) ("the burden is on the appellant to show error by the record") (citations and punctuation omitted). Instead, she points to the affidavit of her counsel and its attached exhibits, which were not presented as evidence to the trial court until after the trial court entered the orders on

11

appeal. As discussed above in Division 2, we cannot consider that material on appeal and we have struck it from the appellate record.

3. *Reapportionment of guardian ad litem fees.*

Ernest argues that the trial court erred in ordering her to reimburse Moffa for his portion of the guardian ad litem's final bill. Earlier the trial court had ordered each side to pay half of the bill, but Moffa requested the reapportionment on the ground that Ernest's actions had expanded the guardian ad litem's investigation. Ernest argues that the reapportionment ruling should be reversed because the trial court did not "reserve" the issue in his earlier order, upon which Ernest says she relied.

A trial court may order a guardian ad litem "be paid by the parties in proportions and at times determined by the judge." OCGA § 19-9-3 (g). The amount and apportionment of the guardian ad litem's fees is a matter for the trial court's discretion. *Gordon v. Abrahams*, 330 Ga. App. 795, 800 (3) (c) (769 SE2d 544) (2015); Ga. Unif. Super. Ct. R. 24.9 (8) (g).

Ernest has not shown that the trial court's reapportionment ruling was an abuse of the discretion afforded by OCGA § 19-9-3 (g). The trial court's order appointing the guardian ad litem expressly provided that "[t]he final apportionment of the [g]uardian ad [l]item's bill shall be determined by the [c]ourt at the close of the case,"

12

and the case was still pending before the trial court when he entered the order reapportioning the guardian ad litem fees, because up to that point the trial court had not yet resolved the issue of attorney fees. See *Jarvis v. Jarvis*, 291 Ga. 818, 819 (1) (733 SE2d 747) (2012) (divorce decree "did not become a final judgment for purposes of appeal until the trial court issued its order awarding attorney[] fees"). The trial court had the inherent authority to modify his judgments while the case was still pending before him. See *Bagley v. Robertson*, 265 Ga. 144, 146 (1) (454 SE2d 478) (1995).

The only authority that Ernest cites for this claim of error, *Richardson v. Richardson*, 237 Ga. 830 (229 SE2d 641) (1976), does not support her contention that the trial court abused his discretion. In *Richardson*, our Supreme Court affirmed an award of attorney fees under a different statute, Code Ann. § 30-202.1, which is now codified as OCGA § 19-6-2 and governs the grant of attorney fees in actions for alimony or for divorce and alimony. *Richardson*, supra at 831-832 (1). The Court in *Richardson* rejected the appellant's argument that an award of attorney fees in a temporary alimony order was "a final and complete award of attorney fees" that the trial court lacked jurisdiction to amend. Id. at 831 (1). Instead, the Court held that "[t]he fact that a court may expressly reserve jurisdiction [in a temporary alimony

13

order] to make an additional award [of attorney fees under Code Ann. § 30-202.1] does *not* mean that such express reservation of jurisdiction is mandatory[.]" *Richardson*, supra at 831 (1) (citation omitted; emphasis supplied). To the extent this decision has any bearing on a trial court's ability to reapportion guardian ad litem fees under OCGA § 19-9-3 (g), it stands for the proposition that the trial court was not required to "reserve" the issue in his earlier apportionment order, contrary to Ernest's argument.

4. *Attorney fees and costs of litigation.*

After an evidentiary hearing, the trial court awarded Moffa attorney fees and costs of litigation under OCGA § 9-15-14 (b), which permits an award of

> reasonable and necessary attorney[ ] fees and expenses of litigation in any civil action in any court of record if [the court] finds that an attorney or party brought or defended an action, or any part thereof, that lacked substantial justification or that the action, or any part thereof, was interposed for delay or harassment, or if it finds that an attorney or party unnecessarily expanded the proceeding by other improper conduct[.]

We "will affirm a trial court's award of attorney fees pursuant to subsection (b) absent an abuse of discretion." *Ettrick v. SunTrust Mtg.*, 349 Ga. App. 703, 705 (2) (a) (824 SE2d 727) (2019). Under that standard, we "review the trial court's legal holdings de

14

novo, and we uphold the trial court's factual findings as long as they are not clearly erroneous, which means there is some evidence in the record to support them." *Lawrence v. Lawrence*, 286 Ga. 309, 310 (1) (687 SE2d 421) (2009).

(a) *Findings of sanctionable conduct.*

The trial court based the attorney fee award on a finding that Ernest had "engaged in improper conduct that caused delays and greatly and unnecessarily expanded the litigation." He cited two general categories of sanctionable conduct — Ernest's actions contributing to the litigation of an emergency motion regarding the school enrollment of some of the children and her actions related to her ongoing substance abuse issues — and he described specific instances of Ernest's conduct within those categories.

The following evidence and statements in place of counsel,[1] viewed in the light most favorable to the trial court's ruling, supports the findings of sanctionable

---

[1]We rely on statements made by Moffa's counsel, without objection, at the hearing on the attorney fee motion. See *Sherman v. City of Atlanta*, 293 Ga. 169, 173-174 (4) (744 SE2d 689) (2013) ("Attorneys are officers of the court and a statement to the court in their place is prima facie true and needs no further verification unless the same is required by the court or the opposite party.") (citation, punctuation, and emphasis omitted). We also rely on material from the guardian ad litem's report, which was admitted into evidence at the bench trial without objection. See OCGA § 24-8-802 ("if a party does not properly object to hearsay, . . . the hearsay evidence shall be legal evidence").

15

conduct. As to the school enrollment issue, there was evidence that in late July 2018, the parties' counsel and the guardian ad litem agreed to seek a continuance of the bench trial then set for July 23. In the meantime, Moffa would continue to have physical primary custody of the children and Ernest would exercise visitation supervised by her sister. But shortly before the beginning of the school year, Ernest's counsel and Ernest's father informed the guardian ad litem that Ernest's parents had refused to continue to pay the children's tuition at the private school they had been attending unless Moffa agreed to let the children live with Ernest's sister. Neither Moffa nor Ernest could pay the tuition themselves. After Moffa and his counsel attempted, unsuccessfully, to get more information about this situation or confirm that the tuition had been or would be paid, Moffa enrolled the children in a local public school. Ernest's parents ultimately paid the tuition, but Moffa decided to keep the children in the public school anyway, leading Ernest to file an emergency motion asking the trial court to compel their enrollment in the private school. The trial court did not issue a formal order ruling on the motion; however, the judge's law clerk sent the parties' counsel an email informing them that the judge felt that the parties needed to maintain the status quo and keep the children in the private school, that if Moffa did not re-enroll them in the school immediately the judge would consider that an act

of bad faith on his part, and that if Ernest's parents did not fund the tuition the judge would consider that a sanctionable act.

As to the substance abuse issue, the parties' consent temporary order conditioned Ernest's visitation with the children on her not using alcohol. And by late July 2018, Ernest was aware that her use of alcohol would be a significant factor in the trial court's custodial decision, because the guardian ad litem had informed counsel of her preliminary assessment regarding custody. Ernest repeatedly told the guardian ad litem that she was not using alcohol. But investigations and discovery conducted by the guardian ad litem and Moffa's counsel revealed that in the weeks preceding the September 23 bench trial, Ernest was frequently abusing alcohol and other drugs. The guardian ad litem documented that abuse in detail in her report. Nevertheless, during this time Ernest resisted Moffa's efforts to settle the custodial issues so as to give him permanent physical custody of the children. See *Reid v. Reid*, 348 Ga. App. 550, 556 (2) (823 SE2d 860) (2019) (holding that trial court may consider settlement offers in determining whether party engaged in sanctionable conduct under OCGA § 9-15-14 (b)).

These substance abuse problems played a role in Ernest's failure to appear at the bench trial. Her trial counsel unsuccessfully sought a continuance on the ground

17

that Ernest was being admitted into an out-of-state residential rehabilitation facility on September 25, the day before the trial was set to begin. But Ernest was not at the facility on the first day of trial. She was still in town and had spent the evening of September 25 and the early morning hours of September 26 at a local bar. On the first morning of trial, her counsel did not know where she was and had been unable to contact her. Ernest failed to appear for the second day of trial because she was in jail. She had been on active probation for a family violence offense against Moffa and the night before the second day of trial she was arrested for a probation violation in connection with a drug charge.

In light of this evidence, we find no error in the trial court's determination that Moffa was entitled to an award under OCGA § 9-15-14 (b). "[T]he trial court's order sufficiently identifies the sanctionable conduct, and, having reviewed the . . . record in this case, we cannot say that the trial court abused [his] discretion in finding the identified conduct to be sanctionable." *Reid*, 348 Ga. App. at 554 (2). While Ernest ultimately prevailed in requiring Moffa to enroll the children at the private school, her attempt to force a change in primary physical custody by withholding the children's school tuition generated in the first instance the dispute over school enrollment and the litigation required to resolve that dispute. Ernest's untruthfulness about her

18

continued substance abuse, a fact that significantly impacted the custodial issues in this case, required additional work on the part of the guardian ad litem, the parties, and the trial court. Moffa was forced to prepare for a contested trial on issues of custody on which Ernest had little if any chance of prevailing, given her ongoing substance abuse problems and the guardian ad litem's recommendation. And the difficulties created by Ernest's failure to appear for trial are obvious. So we are not persuaded by Ernest's arguments that her conduct was not sanctionable.

(b) *Relationship of fees to sanctionable conduct.*

But the fact that Ernest engaged in sanctionable conduct does not end our inquiry. "An award under [OCGA § 9-15-14 (b)] must be supported by sufficient proof of the actual costs and the reasonableness of those costs . . . and the trial court must limit the fees award to those fees incurred because of the sanctionable conduct." *Reid*, 348 Ga. App. at 553-554 (2) (citations, punctuation, and emphasis omitted). "[L]ump sum or unapportioned attorney fees awards are not permitted in Georgia, and . . . the trial court's order [must show], on its face, . . . the complex decision making process necessarily involved in reaching a particular dollar figure[.]" *Moore v. Hullander*, 345 Ga. App. 568, 573 (2) (c) (814 SE2d 423) (2018) (citation and punctuation omitted).

The trial court's order met this requirement. The trial court did not award a lump sum. Instead, he listed in his order the components of the fee award with specific descriptions that tied the fees to sanctionable conduct: fees and expenses related to resolution of the school enrollment issue; fees and expenses related to Moffa's investigation of and development of evidence regarding Ernest's ongoing substance use and associated conduct in August and September 2018; fees and expenses related to preparation for and attendance at the bench trial; and fees and expenses related to the motion for attorney fees. And there is evidence, in the form of billing records and the affidavit of Moffa's counsel, supporting the reasonableness and specific amounts of the fees allocated by the trial court.

*Judgment affirmed. Rickman, P. J., and Senior Appellate Judge Herbert E. Phipps concur.*